UNITED STATES of America,
Appellant,

v.

Jimmie JONES, Appellee.

UNITED STATES of America,
Appellant,

v.

Pedro LOPEZ–VARGAS, Appellee.

Nos. 86–1747, 86–2318.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1987.

Decided Feb. 10, 1987.

Victor D. Stone, Washington, D.C., for appellant.

Philip M. Moomaw, Springfield, Mo., for appellee.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and CAHILL,* District Judge.

LAY, Chief Judge.

The United States ("the government") brings this consolidated appeal from orders of the district court [1] holding that, under 18 U.S.C. § 4245 (Supp.III 1985),[2] a federal prisoner must be afforded a hearing before he may be transferred to a separate facility for a psychiatric or psychological evalua-

---

*The HONORABLE CLYDE S. CAHILL, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The Honorable William R. Collinson, United States District Court for the Western District of Missouri, presiding.

2. That statute provides:

§ 4245. Hospitalization of an imprisoned person suffering from mental disease or defect.

(a) Motion to determine present mental condition of imprisoned person.—If a person serving a sentence of imprisonment objects either in writing or through his attorney to being transferred to a suitable facility for care or treatment, an attorney for the Government, at the request of the director of the facility in which the person is imprisoned, may file a motion with the court for the district in which the facility is located for a hearing on the present mental condition of the person. The court shall grant the motion if there is reasonable cause to believe that the person may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility. A motion filed under this subsection shall stay the transfer of the person pending completion of procedures contained in this section.

(b) Psychiatric or psychological examination and report.—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the person may be conducted, and that a psychiatric

or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

(c) Hearing.—The hearing shall be conducted pursuant to the provisions of section 4247(d).

(d) Determination and disposition.—If, after the hearing, the court finds by a preponderance of the evidence that the person is presently suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility, the court shall commit the person to the custody of the Attorney General. The Attorney General shall hospitalize the person for treatment in a suitable facility until he is no longer in need of such custody for care or treatment or until the expiration of the sentence of imprisonment, whichever occurs earlier.

(e) Discharge.—When the director of the facility in which the person is hospitalized pursuant to subsection (d) determines that the person has recovered from his mental disease or defect to such an extent that he is no longer in need of custody for care or treatment in such a facility, he shall promptly file a certificate to that effect with the clerk of the court that ordered the commitment. The clerk shall send a copy of the certificate to the person's counsel and to the attorney for the Government. If, at the time of the filing of the certificate, the term of imprisonment imposed upon the person has not expired, the court shall order that the person be reimprisoned until the expiration of his sentence of imprisonment.

tion to determine whether mental commitment proceedings should be commenced against him. For the following reasons, we reverse the judgment of the district court.

## Facts

Jimmie Jones was convicted of unarmed bank robbery on October 17, 1980, and sentenced to serve twenty years at the federal prison in Marion, Illinois. In 1981, Jones was admitted to the United States Medical Center for Federal Prisoners in Springfield, Missouri, complaining of abnormal hair growth on his body and the bodies of other prisoners and guards at Marion. He was successfully treated with medication for these hallucinations and was released after three months.

On June 28, 1985, Marion prison officials again transferred Jones to Springfield for a psychiatric evaluation. Jones had been complaining again of abnormal hair growth and of contamination of the water and air conditioning at Marion. Jones was not offered an opportunity for a hearing before this transfer. Dr. James R. Leach, D.O., Chief of Psychiatry at Springfield, concluded that Jones was suffering from a mental disease or defect for which care and treatment in a suitable psychiatric hospital was required. Jones refused to agree voluntarily to the psychiatric treatment, and a hearing was convened to determine whether he should be involuntarily committed to the hospital.

On August 30, 1985, a hearing was held before a United States magistrate pursuant to 18 U.S.C. § 4247(d) (Supp.III 1985).[3] On September 18, 1985, the magistrate issued a report recommending that Jones be found to be suffering from a mental disease or defect requiring treatment and that he be committed to the custody of the United States Attorney General for suitable hospital care and treatment. On September 30, Jones filed exceptions to the magistrate's report and recommendation, arguing, among other things, that he received no notice of his impending transfer to Springfield for psychiatric evaluation nor did he receive a hearing prior to the transfer as required under 18 U.S.C. § 4245(a). In a supplemental report and recommendation, the magistrate determined that Jones was suffering from a mental disease or defect and should be hospitalized, but recommended that prospectively, federal prisoners should be given a hearing before they are transferred to separate facilities for psychiatric evaluation. The district court accepted the magistrate's recommendation and on April 16, 1986, entered an order consistent with that recommendation.[4]

Similarly, Pedro Lopez-Vargas was sentenced to twenty-five years imprisonment in 1983 upon his plea of guilty to second-degree murder. He was also incarcerated in the federal prison at Marion and in April, 1986, prison officials transferred him to Springfield for psychiatric evaluation. A panel at the Springfield hospital recommended hospitalization and a hearing was commenced in United States District Court for the Western District of Missouri pursuant to section 4245(a). On July 28, 1986, the district court dismissed the government's petition, relying on its order of April 16, 1986, in *United States v. Jones* (*see supra,* p. 446), and ordered that Lopez-Vargas be returned to Marion. The government appealed.

## Discussion: Requirement of a Pretransfer Hearing

■ The precise issue before this court is whether 18 U.S.C. §§ 4245 and 4247 re-

---

**3.** That section provides:

    **(d) Hearing**

      At a hearing ordered pursuant to this chapter the person whose mental condition is the subject of the hearing shall be represented by counsel and, if he is financially unable to obtain adequate representation, counsel shall be appointed for him pursuant to section 3006A. The person shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to con-

front and cross-examine witnesses who appear at the hearing.

**4.** On December 8, 1986, the district court concluded that Jones had recovered from his mental illness and released him from psychiatric hospitalization. However, since the relevant portion of the district court's order was prospective, the government's appeal in this case will not be dismissed.

quire that a prisoner be given a hearing before he can be transferred by prison officials to another facility for a psychiatric or psychological evaluation to determine whether commitment proceedings should be initiated against the inmate. Given the clear language of the statute and well-established rules of statutory construction, we hold that such a pretransfer hearing is not required.

■ Several reasons support this conclusion. First, it is clear that section 4245(a) addresses only transfers for *care* or *treatment,* not for evaluation. Subdivision (a) provides, "If a person serving a sentence of imprisonment objects * * * to being transferred to a suitable facility for care or treatment, an attorney for the Government * * * may file a motion * * * for a hearing on the present mental condition of the person." The primary objective of statutory construction is to determine legislative intent. *See Kifer v. Liberty Mutual Ins. Co.,* 777 F.2d 1325, 1332 (8th Cir.1985). If the wording of a statute is plain, simple, and straightforward, the words must be accorded their normal meanings, *United States v. Kelly,* 519 F.2d 251, 256 (8th Cir.1975), and it is appropriate to assume that the ordinary meaning of those words accurately expresses the legislative purpose, *Mills Music, Inc. v. Snyder,* 469 U.S. 153, 164, 105 S.Ct. 638, 645, 83 L.Ed.2d 556 (1985).

In section 4245(a), Congress recognizes only transfers for care or treatment as those which require a hearing. Transfers for evaluations or tests are not mentioned. It is reasonable to infer, therefore, that since evaluations were not mentioned, Congress was only concerned with transfers of a more long-term or indefinite nature. The Senate Judiciary Committee reported that commitment to a suitable facility differed from incarceration in a penal institution sufficiently to require additional procedural safeguards. Some of these differences included the stigma attached to the mentally ill which is different from that attached to criminals, restrictions and routines in a mental health facility which significantly differ from those in a prison, and, most importantly, the possibility that a person mistakenly committed could suffer severe psychological or emotional harm. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 247–48, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3430–31. With the exception of the language of a statute itself, committee reports generally represent the most persuasive indicia of legislative intent. *Mills v. United States,* 713 F.2d 1249, 1252 (7th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984); *see also NLRB v. Res-Care, Inc.,* 705 F.2d 1461, 1470 (7th Cir.1983). Given the concerns expressed by the Senate Judiciary Committee, it is evident that it was concerned with the possible adverse effects on a prisoner mistakenly committed for an indefinite period. Those transferred merely for evaluation fall outside of the scope of this statute.

■ Section 4245(d) reinforces this interpretation by making clear that the hearing will specifically address the issues of whether an inmate suffers from a mental disease or defect and whether he is in need of custody for care or treatment in a suitable facility. In determining legislative intent, we must consider the statute read as a whole. *United States v. Morton,* 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984); *Sierra Club v. Clark,* 755 F.2d 608, 613 (8th Cir.1985). There is no suggestion from subsection (d), or from subsections (a) and (d) read together, that Congress contemplated a pretransfer hearing for an evaluation. Furthermore, the logical construction of sections 4245 and 4247, when considered together, make clear that the purpose of a psychiatric or psychological evaluation would be, in most instances, a necessary predicate before a court could consider whether the prisoner is presently suffering from a mental disease or defect. Thus, under § 4245(b), prior to the date of the hearing, the court itself is empowered to order an examination of the prisoner. It would be incongruous for the court to grant a motion to transfer a prisoner on the grounds of "rea-

sonable cause to believe" that the prisoner is suffering from a mental disease or defect without the benefit of medical testimony to that effect. In other words, for the statutes to have common sense application, the evolution must necessarily precede the hearing to transfer for the purpose of committing the prisoner for care and treatment.

## Due Process

Having concluded that Congress, in passing these provisions, did not intend to afford a hearing to a prisoner transferred to a suitable facility only for psychiatric or psychological evaluation, we must now determine whether the failure of Congress to provide such a hearing violates due process. In *Vitek v. Jones*, 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), which was decided before the relevant amendments to sections 4245 and 4247, the Supreme Court held that a convicted felon retains a residuum of a liberty interest which cannot be taken from him by a commitment to a mental hospital without some procedural protections. *Id.* at 491, 100 S.Ct. at 1262. The Court agreed with the observations of the three judge district court panel that the combination of the greater limitations on freedom of action at the mental facility, the stigma that goes along with a commitment, and the fact that additional mandatory modification systems are used at the facility, constituted a "major change in the conditions of confinement" amounting to "a grievous loss" to the inmate. *Id.* at 492, 100 S.Ct. at 1263 (quoting *Miller v. Vitek*, 437 F.Supp. 569, 573 (D.Neb.1977)). The *Vitek* opinion, however, addresses a statute providing for the indefinite commitment of a prisoner, not merely a transfer for a psychological evaluation. Thus, the court's reliance on the stigma attached to a commitment and the behavioral modification procedures utilized at the facility, on which the court substantially relied in finding a protected liberty interest, has no application to the present case. Since there is little or no danger of

mandatory behavioral modifications in a transfer for evaluation and the stigma attached to such a transfer could be no greater than if the evaluation were done at the prisoner's original place of confinement, the *Vitek* finding of a liberty interest has no import in this case.

▇▇▇ Indeed, a temporary transfer for a psychological evaluation places no more of an imposition on a prisoner than does a transfer for administrative reasons. The Supreme Court has made clear that prison officials may decide to transfer a prisoner from one facility to another for any reason or no reason at all without implicating a liberty interest of the prisoner, even in cases where the prisoner is transferred to a more restrictive environment. *See Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (prisoner transferred from a medium-security state prison to a maximum-security prison, where living conditions were far less favorable); *see also Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (prisoner transferred from federal prison in Hawaii to prison on the mainland because of prisoner's disruptive behavior); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976) (transfer of prisoner from one state maximum-security prison to another maximum-security prison as a disciplinary measure). In the present case we are faced merely with an involuntary transfer from one federal prison to another federal prison to facilitate a psychiatric or psychological evaluation. The due process clause does not prohibit such a transfer. Although a transfer for evaluation may provide some inconvenience to the prisoner, this temporary interruption from one custodial prison to another does not rise to the level of a due process violation. Since only five of the forty-six federal prisons have hospital facilities in which extensive psychiatric or psychological examinations may be performed,[5] if prison officials decide that a psychiatric or psychological evaluation is

5. These institutions are located in Terminal Island, California; Lexington, Kentucky; Rochester, Minnesota; Springfield, Missouri; and Butner, North Carolina.

warranted, it makes sense that the prisoner be sent to one of those five institutions. Thereafter, when the director of the facility in which the prisoner is then imprisoned determines that a transfer to a suitable facility for care or treatment should take place, under § 4245(a), the prisoner may object either in writing or through an attorney and ask for a hearing.[6] Section 4247(d) provides the full extent of due process, including the appointment of counsel for the prisoner at the hearing.

Reversed and remanded for further proceedings.

**6.** We note that there is some concern over the import of the clause in § 4245(a) which states that the motion for a hearing on the prisoner's commitment to a suitable facility shall be made "at the request of the director of the facility in which the person is imprisoned * * * with the court for the district in which the facility is located." The appellee argues that this would require that a prisoner involuntarily transferred to a suitable facility for evaluation would have to be transferred back to the institution of his original incarceration for a hearing on whether he should be committed. If the court decides that a commitment is warranted, the prisoner would be transferred again, presumably, to the suitable facility at which he received his original evaluation. To the contrary, if a prisoner is originally transferred involuntarily to, *e.g.,* Springfield for an evaluation, he is imprisoned at Springfield, at least for the time being. If, following the evaluation, prison officials decide he should be admitted to the facility for care or treatment, the prisoner may request a hearing by filing a suitable motion with the district court in the district where Springfield is located. That court is the court in the district in which he is currently imprisoned for purposes of following the mandates of § 4245(a). However, under § 4247(d), when that occurs, the Director should provide the prisoner with access to witnesses and documents (if shown to be justifiable and otherwise relevant) from the prison from which he was sent for evaluation in the original instance.