**STATE OF SOUTH DAKOTA, DEPARTMENT OF SOCIAL SERVICES, Plaintiff,**

v.

**Edward R. MADIGAN, Secretary of the Department of Agriculture; the Department of Agriculture; Betty Jo Nelson, Administrator of the Food and Nutrition Service; and the Food and Nutrition Service, Defendants.**

**Sharon Long CROW; David Genia, Sr.; and Janet Kampshoff, Plaintiffs,**

v.

**Edward R. MADIGAN, Secretary of the Department of Agriculture, Defendant.**

Civ. Nos. 91–3009, 91–3022.

United States District Court, D. South Dakota, C.D.

May 12, 1993.

**1470**

Mark W. Barnett, Atty. Gen., State of SD, Ronald D. Campbell, William J. Nevin, Karen E. Cremer, Dept. of Social Services, Pierre, SD, for State of SD, Dept. of Social Services.

Krista Helen Clark, Dakota Plains Legal Services, Mission, SD, for plaintiffs Long Crow, Genia & Kampshoff.

Thomas S. Williamson, Jr., Christina A. Spaulding, Covington & Burling, Washington, DC, David L. Zuercher, Asst. U.S. Atty., Pierre, SD, Brian Wolfman, Alan B. Morrison, Public Citizen Litigation Group, John Koch, U.S. Dept. of Agr., Victoria J. Rosenthal, Dept. of Justice, Thomas M. Gerson, Thomas Millet, U.S. Dept. of Justice, Washington, DC, for federal defendants Madigan and Dept. of Agr.

INDEX | Page

I. Statutory Background ... 1471
   A. Food Stamp Act ... 1471
   B. Housing Act ... 1472
II. Factual Background ... 1473
III. Discussion ... 1474
   A. Standard of Review ... 1474
   B. The Energy Assistance Exclusion ... 1475
     1. Plain Meaning ... 1475
     2. Legislative History ... 1476
   C. Review of the Secretary's Policy ... 1477
     1. UR's Defray Both Energy and Non-energy Costs Which May Be Separated From Each Other ... 1477
     2. Secretary Applies Exclusion to LIHEAP Benefits ... 1477
     3. Secretary's Policy Frustrates Congressional Policy ... 1478
     4. Even With Due Deference, Secretary's Policy is Impermissible ... 1478
   D. The Housing and Community Development Reauthorization Act ... 1478
IV. Conclusion ... 1479

## MEMORANDUM OPINION

DONALD J. PORTER, Senior District Judge.

These cases have been consolidated for disposition because they raise common questions of law and fact. The court exercises jurisdiction over this consolidated action pursuant to 28 U.S.C. § 1331. Plaintiffs challenge defendants' policy of including utility reimbursements, provided to certain low-income persons by the Department of Housing and Urban Development, as income when calculating eligibility for the receipt of food stamps. The parties to this consolidated action filed cross motions for summary judgment.[1] Summary judgment properly disposes of this action since no genuine issue exists as to any material fact, and judgment may be granted as a matter of law. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Plaintiffs claim that the Secretary's policy of including utility reimbursements as income in the calculation of food stamp benefits violates certain sections of the Food Stamp Act, specifically 7 U.S.C. §§ 2014(d)(1) and 2014(d)(11) (Supp.1992). Additionally, individual plaintiffs Long Crow, Genia, and Kampshoff argue that the Secretary's policy violates their Due Process rights under the Fifth Amendment to the United States Constitution. Defendants maintain that this policy violates neither federal laws nor the Constitution. In considering these cross motions for summary judgment, the court first reviews the statutory background of the relevant federal benefit programs.

### I. Statutory Background

#### A. The Food Stamp Act

The Food Stamp Act of 1977, 7 U.S.C. §§ 2011 *et seq.*, created a "federally funded, state administered program to supplement the food purchasing power of eligible individuals." *West v. Bowen*, 879 F.2d 1122, 1124 (3d Cir.1989). Congress declared that the purposes of the food stamp program are "to promote the general welfare, to safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C. § 2011 (1985). Because "the limited food purchasing power of low-income households contributes to hunger and malnutrition," *id.*; Congress initiated the food stamp program to "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households." *Id.*

Under the food stamp program, eligible households receive coupons to purchase food from approved retail food stores. 7 U.S.C. § 2013(a) (Supp.1992). A household's eligibility to receive these coupons, or "food stamps," is determined by calculating the income resources available to the household. 7 U.S.C. § 2014 (Supp.1992). "The calculation of food stamp benefits [is] based on ... [the] relative levels of household income: the lower the income level, the more food stamps the household is entitled to receive and vice versa." *Baum v. Yeutter*, 750 F.Supp. 845, 847 (N.D.Ohio 1990) *rev'd*, 979 F.2d 438 (6th Cir.1992); *see also*, 7 U.S.C. § 2017(a) (Supp. 1992); *and West*, 879 F.2d at 1124. In calculating food stamp benefits, Congress defined household income broadly to "include all income from whatever source." 7 U.S.C. § 2014(d) (Supp.1992); *see also* 7 C.F.R. 273.9(b) (1992). Yet, Congress also lessened the impact of this sweeping definition of income by creating several exceptions to it.

1. On March 6, 1991, the State of South Dakota Department of Social Services, alleging violations of the Food Stamp Act, filed suit against Jack Parnell, acting Secretary of the Department of Agriculture; the Department of Agriculture; Betty Jo Nelson, Administrator of the Food and Nutrition Service; and the Food and Nutrition Service. On April 4, 1991, the Court granted plaintiff's motion for automatic substitution of party, and Mr. Parnell was replaced by Edward R. Madigan, the newly appointed Secretary of Agriculture.

On May 24, 1991, Sharon Long Crow, and David Genia, Sr. also sued Edward R. Madigan, in his official capacity as Secretary of the Department of Agriculture, alleging the violations of the Food Stamp Act asserted by the State and advancing a Due Process claim as well. The court granted Long Crow's and Genia's unopposed motion to add Janet Kampshoff as a plaintiff on July 10, 1992. For purposes of simplicity, the court refers to the defendants collectively as the "Secretary" and to the State of South Dakota Department of Social Services as the "State."

These statutory exclusions from income include, among others:

(1) any gain or benefit which is not in the form of money payable directly to a household, ...

(11) any payments or allowances made for the purpose of providing energy assistance (A) under any Federal law, or (B) under any State or local laws, designated by the State or local legislative body authorizing such payments or allowances as energy assistance....

7 U.S.C. § 2014(d).

The standards for applying these income exclusions are fixed by the Secretary's issued regulations. *Susan v. Scales,* CA No. S91–65M, slip op. at 3 (N.D.Ind. May 20, 1992); *see generally,* 7 C.F.R. § 273.9. State agencies bear the responsibility for applying these regulations by determining which households are eligible to receive food stamps, calculating the eligible households' allotments, and issuing the food stamp coupons. 7 U.S.C. § 2020 (1985 & Supp.1992). However, the state agencies do not bear the brunt of the administrative costs, since "[t]he federal government pays for the full cost of food stamp benefits, its own administrative costs and at least 50% of eligible state administrative expenses." *Massachusetts v. Lyng,* 893 F.2d 424, 425 (1st Cir.1990); 7 U.S.C. § 2025(a) (Supp.1992). Thus, in their administration of the food stamp program, the states must comply with uniform, national standards for determining eligibility set by the Secretary. 7 U.S.C. §§ 2013(c) and 2014(b) (1985 & Supp.1992). "The Food Stamp Act grants the Secretary of Agriculture broad discretion to issue regulations necessary for the food stamp program's efficient administration and to define income and resource eligibility standards." *Susan,* slip op. at 3 (citing 7 U.S.C. § 2011 *et seq.;* and *Knebel v. Hein,* 429 U.S. 288, 292–93, 97 S.Ct. 549, 552–53, 50 L.Ed.2d

485 (1977)). In this consolidated action, plaintiffs challenge the Secretary's policy of refusing to apply the Food Stamp Act's exclusions from income, specifically 7 U.S.C. § 2014(d)(1) & (11), to utility reimbursements disbursed under the Housing Act.

### B. The Housing Act

The United States Housing Act of 1937, 42 U.S.C. §§ 1401, *et seq.,* as amended, provides that the Department of Housing and Urban Development (HUD) will operate and fund low-income housing. Congress designed the Housing Act

to promote the general welfare of the Nation by employing its funds and credit, as provided in this Act, to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income....

42 U.S.C. § 1437 (Supp.1992). The Housing Act authorizes Public Housing Authorities (PHA's) [2] to administer and operate housing assistance programs under contract with HUD. *Id.*

Pursuant to the goals of the Housing Act, the low-income tenant of a PHA pays no more than thirty percent (30%) of his monthly adjusted income to rent his unit. 42 U.S.C. § 1437a(a)(1) (1990 & Supp.1992); 24 C.F.R. § 913.107 (1992). This thirty percent ceiling is referred to as the "total tenant payment." 24 C.F.R. §§ 905.102 and 905.-325(a) (1992). If the amount of the monthly rent exceeds the total tenant payment, HUD pays the difference between the rent and the total tenant payment to the PHA. 42 U.S.C. § 1437f(c) (Supp.1992). For these low-income tenants, "rent" means not only payment for shelter, but also includes "utilities and all maintenance and management charges." *Id.*[3] Tenants of the PHA's, there-

---

**2.** The term PHA also includes any Indian housing authority or Tribal Housing Authority (THA). 42 U.S.C. § 1437a(b)(6) (Supp.1992). HUD contributes funds to local PHA's, which enter into contracts to make assistance payments to owners of existing dwellings units. 42 U.S.C. § 1437f(b) (Supp.1992). In the absence of a local PHA, the Secretary of HUD may enter into such contracts directly with the owners of the units. *Id.*

**3.** HUD has provided that "utilities include electricity, gas, heating fuel, water, sewerage service, septic tank pumping/maintenance, sewer system hookup charges (after development), and trash and garbage collection. Telephone service is not included as a utility." 24 C.F.R. § 905.102 (1992).

fore, pay no more than 30% of their monthly income for both rent and utilities.

The amount that HUD allots to the tenants for their monthly utility expenses is the "utility allowance." 24 C.F.R. §§ 905.885, 965.470 and 965.476 (1992). Rather than tailoring the utility allowance to each individual unit, the local housing authority determines a community-wide average utility allowance. 24 C.F.R. § 965.470; *Baum,* 750 F.Supp. at 847. A utility allowance is intended to "approximate a reasonable consumption of utilities by an energy-conservative household of modest circumstances consistent with the requirements of a safe, sanitary, and healthful living environment." 24 C.F.R. § 965.476; *Baum,* 750 F.Supp. at 847.

A tenant may have such a low monthly income that his utility allowance exceeds the amount he must pay for his rent and utilities. *Susan,* slip op. 5; *see infra* n. 4. When a tenant's utility allowance is greater than his total tenant payment, he receives the excess utility allowance as a "utility reimbursement" (UR). 24 C.F.R. § 913.102 (1992). This UR may be paid directly to the tenant, jointly to the tenant and his utility provider, or solely to his utility provider. 24 C.F.R. §§ 905.-325(b) and 913.108 (1992). Plaintiffs challenge the Secretary's policy of including UR's as income when calculating food stamp benefits.[4]

## II. Factual Background

In February 1990, the Secretary issued Policy Memorandum 90–6, declaring that UR's must be included as income in the calculation of food stamp benefits. The food stamp program in South Dakota is administered by plaintiff South Dakota Department of Social Services. In calculating food stamp benefits, the State does include UR's as income when they are paid to individual housing authority residents, rather than to the utility providers. Contrary to the Secretary's policy, the State does not consider UR's as income when they are paid directly to the utility providers, rather than to the individual housing authority residents. The State maintains, however, that all UR's should be excluded from income. If the State continues to defy the Secretary's policy by excluding UR's from income, the State risks a reduction in federal financial assistance or the imposition of penalties.

Individual plaintiffs Sharon Long Crow, David Genia, Sr., and Janet Kampshoff reside in South Dakota. Long Crow and Genia live in THA's, and Kampshoff lives in a PHA. Each plaintiff receives a monthly UR because, in each case, the plaintiff's utility allowance exceeds the amount owed for rent.[5] HUD pays UR's for Long Crow and Genia to their respective THA's, which in turn, transfer the funds to the utility providers for Long Crow and Genia.[6] HUD pays Kampshoff's UR's directly to her so that she may pay her utility providers with these funds. In addition to this housing assistance, each of the

4. For example, a PHA tenant (Tenant A) with $300 monthly adjusted income would be required to pay $100 for her monthly rent and utilities. If the community-average utility allowance was $40, Tenant A would receive a $40 credit against her required payment, but no utility reimbursement. However, another tenant (Tenant B) with a monthly adjusted income of $100 would be required to pay $30 for her monthly rent and utilities. If Tenant B's utility allowance was also $40, she would receive a utility reimbursement of $10 per month. The Secretary's policy includes Tenant B's $10 utility reimbursement as income when calculating food stamp benefits. Yet, the Secretary would not include any of Tenant A's utility allowance as income in the computation of food stamp eligibility.

5. Long Crow's monthly adjusted income is $185. Therefore, her total tenant payment is $56 per month, 30% of her adjusted income. Since Long

Crow's monthly utility allowance of $173 exceeds her monthly total tenant payment by $117, Long Crow is credited with a utility reimbursement of $117 per month.

Genia's monthly adjusted income is $280. Therefore, his monthly total tenant payment is $84. Since Genia's monthly utility allowance of $238 exceeds his monthly total tenant payment by $154, Genia is credited with a utility reimbursement of $154 per month.

Kampshoff's monthly adjusted income is $234. Therefore, her monthly total tenant payment is $70. Since Kampshoff's monthly utility allowance of $212 exceeds her monthly total tenant payment by $142, Kampshoff is credited with a utility reimbursement of $142 per month.

6. The THA utility allowances do not pay for water, sewer, or trash services. Rather, they defray expenses only for heating, lighting, hot water, and the operation of electrical appliances.

individual plaintiffs receives food stamps. If these plaintiffs' UR's are included as income in the calculation of their eligibility for food stamps, their food stamp allotments decrease.[7]

Plaintiffs ask the court to declare that the Secretary's policy of including UR's as income violates the Food Stamp Act. They contend that UR's fall within statutory exclusions from income as: (1) gains or benefits not in the form of money payable directly to a household, and (2) payments or allowances made for the purpose of providing energy assistance under federal law. 7 U.S.C. § 2014(d). Further, the individual plaintiffs request that the court find the Secretary's policy unconstitutional, as a violation of their Fifth Amendment right to Due Process. They seek summary judgment and ask the court to enjoin the Secretary from enforcing such a policy, to give plaintiff Kampshoff retroactive relief from food stamps she has been ineligible to receive under current policy, and to award them attorney's fees and costs.

The Secretary also seeks summary judgment, arguing that the policy of including UR's as income complies with both the Food Stamp Act and the Constitution. The Secretary contends that the plain meaning and legislative history of the Food Stamp Act demonstrate that UR's constitute household income and do not fall within any exception to the definition of income. Therefore, the Secretary requests the dismissal of this action, with no relief awarded to plaintiffs.

### III. Discussion

#### A. Standard of Review

■ Before addressing the substantive issues raised by plaintiffs, the court establishes its standard of review.

When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.

First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnotes omitted). When Congress fails to clearly express its intent, the agency's interpretation of a statute must be "rational and consistent with the statute." *Sullivan v. Everhart,* 494 U.S. 83, 89, 110 S.Ct. 960, 964, 108 L.Ed.2d 72 (1990) (quoting *NLRB v. United Food and Commercial Workers,* 484 U.S. 112, 123, 108 S.Ct. 413, 416, 98 L.Ed.2d 429 (1987)).

■ The court owes some deference to an agency's reasonable interpretation of a statute. *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.,* —— U.S. ——, ——, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52, 65 (1992); *Beef Nebraska, Inc. v. United States,* 807 F.2d 712, 716 (8th Cir.1986). Yet, "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Chevron,* 467 U.S. at 843 n. 9, 104 S.Ct. at 2781 n. 9 (citations omitted). The court need accord deference to an agency interpretation "only if the agency's interpretation has a reasonable basis in

---

7. Long Crow currently receives $308 in food stamps per month. Genia currently receives $483 in food stamps per month. Presently, the State does not include Long Crow's and Genia's utility reimbursements as income. However, if the State did include such utility reimbursements as income to Long Crow and Genia, Long Crow's food stamp allotment would be reduced by $53,

to $255 monthly, and Genia's food stamp allotment would be reduced by $82, to $401 monthly.

Kampshoff currently receives $505 in food stamps per month, and her utility reimbursement is included as income when calculating this benefit. If her utility reimbursement were not considered as income, Kampshoff's monthly food stamp allotment would increase by $42 to $547.

law and does not frustrate congressional policy." *Springdale Memorial Hosp. Ass'n, Inc. v. Bowen*, 818 F.2d 1377, 1380 (8th Cir.1987). The court's deference to an agency's interpretation of a statute "is constrained by [the court's] obligation to honor the clear meaning of [the] statute, as revealed by its language, purpose, and history." *Baum*, 750 F.Supp. at 853 (quoting *Int'l Bhd. of Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)).

Guarding against arbitrary interpretations, the court "must engage in a 'thorough, probing, in-depth review,'" of the Secretary's policy. *Midtec Paper Corp. v. United States*, 857 F.2d 1487, 1498 (D.C.Cir.1988) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983) and *Burlington Truck Lines v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245–46, 9 L.Ed.2d 207 (1962)). "[T]he thoroughness, validity, and consistency of an agency's reasoning are factors that bear upon the amount of deference to be given to an agency's ruling." *FEC v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37, 102 S.Ct. 38, 44, 70 L.Ed.2d 23 (1981) (citations omitted).

In determining the substantive issues of this consolidated action, the court first considers plaintiffs' statutory claims. "A court presented with both statutory and constitutional grounds to support the relief requested usually should pass on the statutory claim before considering the constitutional question." *Califano v. Yamasaki*, 442 U.S. 682, 692, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979) (citations omitted). When addressing the statutory claims, the court must initially determine whether Congress has clearly expressed its intent regarding the inclusion or exclusion of UR's as income in calculating food stamp benefits. Should the court find such clear intent lacking, the court must then

construe the statute with due deference to the Secretary's interpretation. If the Secretary's interpretation is rational and consistent with the statute, UR's are includible as income. However, if the Secretary's policy frustrates congressional policy, as revealed by the language, purpose, and history of the Food Stamp Act, UR's are excluded from income.

### B. The Energy Assistance Exclusion

■ According to 7 U.S.C. § 2014(d)(11), "any payments or allowances made under ... any Federal law for the purpose of providing energy assistance" must be excluded from income in food stamp eligibility calculations. Plaintiffs and the Secretary dispute the applicability to UR's of this energy assistance exclusion from income.

#### 1. Plain Meaning

Congress failed to statutorily define "energy assistance," and this failure has led to differing interpretations of the energy assistance exclusion, especially in relation to UR's.[8] Some courts have found that the plain language of the energy assistance exclusion reveals that Congress clearly intended the exclusion to encompass UR's. *See West*, 879 F.2d 1122; *Carpenter v. N.C. Dep't of Human Resources*, 107 N.C.App. 278, 419 S.E.2d 582 (1992). These courts neither defined energy assistance nor considered whether UR's, with certain non-energy components, could constitute energy assistance. *Larry*, 753 F.Supp. at 799. Their conclusion, however, is supported by the sponsor of a 1988 amendment to 7 U.S.C. § 2014(d)(11) who stated, "All Federal payments for the purpose of providing energy assistance would continue to be excluded as income, whether or not specifically designated for energy assistance. It is the purpose for which they

---

**8.** The Court of Appeals for the Eighth Circuit has not yet addressed this issue, but other courts have split concerning the applicability of the energy assistance exclusion to utility reimbursements. *Compare West v. Bowen*, 879 F.2d 1122 (3d Cir.1989) (Secretary's decision to include utility reimbursements as income constituted impermissible construction of statute; *and Carpenter v. N.C. Dep't of Human Resources*, 107 N.C.App. 278, 419 S.E.2d 582 (1992) (same);

*with Estey v. Madigan*, 814 F.Supp. 152 (D.Maine 1993) (utility reimbursements do not fall within the ambit of the energy assistance exclusion and are includible as income); *Scott v. Grunow*, CA No. 1:90–0188, slip op. (M.D.Tenn. May 20, 1992) (same); *Susan v. Scales*, CA No. S91–65M, slip op. (N.D.Ind. May 20, 1992) (same); *Larry v. Yamauchi*, 753 F.Supp. 784 (E.D.Ark.1990) (same); *and Mitchell v. Block*, No. 82–3297–2, slip op. (D.S.C. June 22, 1983) (same).

are given and not their label that governs." 127 Cong.Rec. H9878 (Dec. 16, 1981) (remarks of Rep. Richmond), *quoted in West*, 879 F.2d at 1131.

Plaintiffs concur with these decisions and argue in favor of a broad interpretation of the energy assistance exclusion. They ask the court to find that the energy assistance exclusion clearly encompasses UR's. The Secretary, however, seeks a much more narrow interpretation of the energy assistance exclusion. The Secretary asserts that UR's cannot fit within the energy assistance exclusion because UR's include money to pay for both energy and non-energy services, such as water and sewer services and garbage collection. *See* 24 C.F.R. § 965.472. The Secretary further claims that Congress did not intend the energy assistance exclusion to apply to every general benefit which defrays energy costs. Rather, the Secretary argues that Congress intended the exclusion to include only benefits defraying sharply rising energy costs. The Secretary thus applies the exclusion to benefits distributed through the Low–Income Home Energy Assistance Program (LIHEAP) but not to UR's.

Finally, the Secretary contends that the presence of these conflicting interpretations demonstrates the ambiguity of the energy assistance exclusion. *Larry*, 753 F.Supp. at 793. The Secretary maintains that this alleged ambiguity requires the court to examine the legislative history of the Food Stamp Act to determine whether the Secretary's application of the energy assistance exclusion is permissible and consistent with the statute's history. *Chevron*, 467 U.S. at 842–43, 104 S.Ct. at 2781–82.

### 2. Legislative History

Congress defined income, for purposes of the Food Stamp Act, to include "all income from whatever source" with certain limited exclusions. *Larry*, 753 F.Supp. at 794; *see also* 7 U.S.C. § 2014(d).[9] In pronouncing this definition, Congress expressed its intent "to cast the broadest net, including all forms of what has been found to constitute income." H.R.Rep. No. 464 at 27, *reprinted in* 1977 U.S.C.C.A.N. at 2004, *cited in Larry*, 753 F.Supp. at 794; *Scott*, slip op. at 15. Enacting this expansive definition of income, Congress explained: "assistance payments from Federal or federally aided public assistance programs ... are considered to be fully includible unless the law providing for these payments contains language that 'specifically excludes' those payments from consideration as income for determining eligibility for the food stamp program." *Larry*, 753 F.Supp. at 794 (quoting H.R.Rep. No. 788, 96th Cong., 2d Sess. 121, *reprinted in* 1980 U.S.C.C.A.N. 843, 954).

However, Congress curtailed this broad definition of income in 1979, partly by enacting the "energy assistance" exclusion

> in connection with the Federal Government's efforts to offset low-income household's increased home energy costs [through a range of programs].... Since the idea of these new programs was essentially to hold low-income households harmless by permitting them to buy the same amount of energy they would have utilized in past years without having to diminish their already marginal incomes, the programs represented more of a wash transaction than any real increase in the recipient or benefitted households' purchasing power.

*Id.* at 794–95 (quoting H.R.Rep. at 121–22, *reprinted in* 1980 U.S.C.C.A.N. at 954–55); *Scott*, slip op. at 15. Some courts determined that such legislative history required them to sustain the Secretary's interpretation of the energy assistance exclusion. *Scott*, slip op. at 17; *Susan*, slip op. at 14–15; *Larry*, 753 F.Supp. at 794–97.

Although these courts criticized the *West* court for failing to define energy assistance, they also failed to state any definition. *Scott*, slip op. at 14, n. 11; *Susan*, slip op. at 21; *Larry*, 753 F.Supp. at 799. Instead, they decided that legislative history showed Con-

---

9. The original Food Stamp Act failed to define income. *Larry*, 753 F.Supp. at 793 (citing H.R.Rep. No. 464, 95th Cong., 1st Sess. 40, *reprinted in* 1977 U.S.C.C.A.N. 1704, 1978, 2016); *Scott*, slip op. at 15. This "lack of congressional direction led to several lawsuits over the proper definition of income;" so Congress stated its definition in 1977. *Larry*, 753 F.Supp. at 793 (citing H.R.Rep. No. 464 at 5, *reprinted in* 1977 U.S.C.C.A.N. at 1982).

gress' intent for the exclusion to apply only to benefits received through federal programs which defray rapidly increasing energy costs, such as LIHEAP benefits. *Scott,* slip op. at 17; *Susan,* slip op. at 14–15; *Larry,* 753 F.Supp. at 794–97.[10] Such an analysis found the Secretary's application of the energy assistance exclusion permissible.

### C. Review of the Secretary's Policy

The Secretary advances such legislative history and caselaw to support his policy of refusing to apply the energy assistance exclusion. Plaintiffs counter this authority by promoting the remarks of a legislator, who stated, *"All Federal payments for the purpose of providing energy assistance would continue to be excluded as income...."* 127 Cong.Rec. H9878 (Dec. 16, 1981) (remarks of Rep. Richmond) (emphasis added), *quoted in West,* 879 F.2d at 1131. Thus, the Secretary and the plaintiffs present the court with conflicting and inconclusive legislative history. Since Congress' intent is unclear, the court must determine whether the Secretary's interpretation is permissible. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. The Secretary first justifies its interpretation by stating that UR's defray both energy and non-energy costs; therefore, they cannot be considered to be "energy assistance.

#### 1. UR's Defray Both Energy and Non-energy Costs Which May Be Separated From Each Other

The Secretary argues that because UR's pay for both energy and non-energy costs, *see* 24 C.F.R. § 905.102; they cannot fit within the energy assistance exclusion. The Secretary maintains that the payments for the non-energy components of UR's cannot be separated from the energy components, or they may be separated only through great administrative cost and burden to the food stamp program. Thus, since UR's defray both energy and non-energy costs, they simply cannot be considered to be energy assistance.

Plaintiffs reply that UR's can be considered energy assistance because they pay for energy costs, and the non-energy components of UR's can be separated from the energy components. When HUD computes utility allowances and UR's, it assigns specific dollar amounts to each energy and non-energy component of the allowances. Exhibits 7, Attachment B; 57; and 58. The energy and non-energy components of utility allowances are thus already separated by HUD. UR's are merely percentages of utility allowances. Therefore, computing the energy and non-energy components of UR's would be a simple matter of arithmetic, not a great administrative burden.

Further, plaintiff Long Crow and plaintiff Genia both receive UR's for only heating, lighting, hot water, and the operation of electrical appliances. Their UR's do not pay for water, sewer, or trash services. Because the energy and non-energy components of UR's are easily separated, the Secretary's argument that UR's do not provide energy assistance merely because they include non-energy components is unpersuasive.

#### 2. The Secretary Applies the Exclusion to LIHEAP Benefits

Plaintiffs also assert that the Secretary's policy impermissibly applies the energy assistance exclusion to LIHEAP benefits but not to UR's. Plaintiffs contend that the Secretary ignores the fact that LIHEAP benefits would no longer qualify if the exclusion encompassed only funds disbursed to combat dramatically rapidly rising energy costs. The Secretary claims that it excludes LIHEAP benefits from income as energy assistance because LIHEAP benefits defray *increasing* energy costs.

Yet, LIHEAP's reference to "rising" energy costs was deleted in 1981. *Compare* Crude Oil OBRA of 1981, Pub.L. 97–35 § 304(a) *with* OBRA of 1981, Pub.L. 97–35, § 2602(a). Moreover, as early as 1980 and 1981, LIHEAP's purpose shifted from subsi-

---

**10.** These courts relied in part on this legislative statement: "Only where energy costs are a but-for cause of the increased payment should the payment be excluded from income and, then, only to the extent that the increase is attributable to high heating costs rather than general inflationary conditions." H.R.Rep. No. 788, 96th Cong., 2d Sess. 123, *reprinted in* 1980 U.S.C.C.A.N. 843, 956. *Scott,* slip op. at 17; *Susan,* slip op. at 14; *Larry,* 753 F.Supp. at 796.

dizing only increasing costs, to paying for "routine heating assistance." *See* Plaintiffs' Exhibit 43: General Accounting Office, *Low-Income Home Energy Assistance: A Program Overview*, at 13–15. Even though LIHEAP now provides merely "routine heating assistance," just as UR's do, the Secretary implements the energy assistance exclusion for LIHEAP benefits and not for UR's, based upon the incorrect assumption that LIHEAP combats rapidly rising energy costs. The Secretary's policy of applying the energy assistance exclusion to LIHEAP but denying it from UR's is thus arbitrary.

### 3. Secretary's Policy Frustrates Congressional Intent

The Secretary's policy toward the energy assistance exclusion also contradicts the purposes of the Food Stamp Act. Congress implemented the Food Stamp Act "[to raise] levels of nutrition among low-income households." 7 U.S.C. § 2011. Yet, the Secretary's failure to apply the energy assistance exclusion to UR's hurts families at the lowest income levels. *See supra* n. 4. Additionally, the Secretary's policy brings the implementation of the Food Stamp Act into conflict with the goals of the Housing Act to "remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of lower income." 42 U.S.C. § 1437.

When the Housing Act provides utility allowances to families with extremely low incomes, the Secretary includes the resulting UR's as income for the purposes of computing food stamp benefits. However, when families with slightly higher incomes receive credit against their rental obligation in the form of utility allowances, the Secretary does not include such utility allowances as income. This interpretation imposes a disadvantage upon a person simply because his income is so low that he receives part of his utility allowance as a UR. Such an interpretation raises equal protection considerations. *West*, 879 F.2d at 1132. "It is a long-standing canon of construction that a statute should be read, whenever possible, to avoid constitu-

tional entanglements." *Id.* (citing *Califano v. Yamasaki*, 442 U.S. 682, 693, 99 S.Ct. 2545, 2553, 61 L.Ed.2d 176 (1979)).

### 4. Even With Due Deference, Secretary's Policy is Impermissible

Although the court owes some deference to the Secretary's interpretation of the Food Stamp Act, the court need not give such deference when the Secretary's interpretation is unreasonable and frustrates congressional policy. *See Springdale Memorial Hosp. Ass'n*, 818 F.2d at 1380. The court finds that even giving due deference to the Secretary's interpretation of the energy assistance exclusion, the Secretary's policy arbitrarily applies the exclusion to LIHEAP but denies it to UR's. The Secretary's policy also frustrates Congressional purpose as revealed by the language, purpose, and history of the Food Stamp Act. Thus, the court must find that the Secretary's interpretation of the energy assistance exclusion is impermissible. *Midtec. Paper Corp. v. United States*, 857 F.2d at 1498.

The court finds that the energy components of UR's, such as electricity, gas, and heating, do fall within the plain language of the energy assistance exclusion. As such, UR's, to the extent they actually compensate recipients for energy costs, must be excluded from income in the calculation of food stamp benefits. This finding is supported by recent congressional action. Acknowledging that policies like the Secretary's could actually force low-income families to choose between "heating or eating," Congress recently enacted the Housing and Community Development Reauthorization Act.

### D. The Housing and Community Development Reauthorization Act

■ The Housing and Community Development Reauthorization Act (Reauthorization Act) [11] addresses several situations confronted in the administration of public housing. Section 927 of the Reauthorization Act is a

---

11. On October 28, 1992, President Bush signed into law Pub.L. 102–550, the Housing and Com-
munity Development Reauthorization Act.

"Clarification on Utility Allowances" under the Housing Act. Section 927 states:

(a) ELIGIBILITY.—Tenants who—

(1) are responsible for making out-of-pocket payments for utility bills; and

(2) *receive energy assistance through utility allowances that include energy costs* ...; shall not have their eligibility or benefits under other programs designed to assist low-income people with increases in energy costs since 1978 (including but not limited to the Low–Income Home Energy Assistance Program) reduced or eliminated.

(b) EQUAL TREATMENT IN BENEFIT PROGRAMS.—Tenants described in subsection (a) shall be treated identically with other households eligible for such assistance, including the determination of the home energy costs for which they are responsible and *in the determination of their incomes.*

Housing and Community Development Reauthorization Act, Pub.L. No. 102–550, § 927, 106 Stat. 3672, 3885–86 (1992) (emphasis added).

The determination of § 927's effect, if any, upon the case at bar must commence with § 927's language. *Mallard v. United States District Court of Iowa,* 490 U.S. 296, 300, 109 S.Ct. 1814, 1817, 104 L.Ed.2d 318 (1989). If the language of § 927 is plain and no contrary legislative history exists, the court must accord the language its plain meaning. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *United States v. Jones,* 811 F.2d 444, 447 (8th Cir.1987). According to Congress' plain use of the words, recipients of "utility allowances," which by definition includes recipients of UR's, under the Housing Act receive such utility allowances as "energy assistance." Furthermore, tenants who receive energy assistance in the form of utility allowances are to be treated identically with other recipients of energy assistance in the "determination of their incomes." This bill demands that families who receive energy assistance in the form of utility allowances be treated equally with families who receive benefits under other programs, such as LIHEAP. This plain expression of Congressional intent is supported by the legislative history of § 927.

A member of § 927's drafting committee stated that Congress created utility allowances for the same reason that it enacted LIHEAP: "to protect low-income people against rapidly rising energy costs." 138 Cong.Rec. H11471 (Oct. 5, 1992) (statement of Rep. Waters). Representative Waters continued:

The need for these supplementary programs was highlighted by a recently published report that low-income children ages 6 to 18 months had the lowest body weights, often reaching dangerously low level, in the months following the coldest parts of the year; apparently high heating bills forced these families to choose between heating and eating with sever consequences whichever the choice. *This amendment seeks to protect families from that cruel dilemma. It does not require other programs to establish any special rules or preference; it only provides that where such rules or preferences exist, recipients of utility allowances shall be given the benefit of them to the same extent as LIHEAP recipients.*

*Id.* at H11471–72 (emphasis added).[12] This recent congressional action supports the court's finding that UR's do constitute energy assistance. Since the court's finding that UR's must be excluded from income as energy assistance disposes of this .action, the court need not address the other issues raised by the parties.

## IV. Conclusion

The court finds that the Secretary's policy of denying UR's status as exemptions from income for purposes of calculating food stamp benefits is an impermissible construction of the statute. 7 U.S.C. § 2014(d)(11). The energy components of UR's—heating, gas, and electricity—plainly constitute ener-

**12.** Senator Cranston, who offered § 927 as an amendment to the Reauthorization Act, agreed with Representative Waters, making virtually the same statements to the Senate. 138 Cong.Rec. S17910 (Sept. 10, 1992).

gy assistance and must be excluded from income when calculating food stamp benefits. Therefore, the Secretary's motion for summary judgment is denied, and plaintiffs' motion for summary judgment is granted to the extent that the Secretary may not enforce its impermissible policy toward UR's within this court's jurisdiction. Plaintiff Kampshoff's request for retroactive relief is denied because such relief would not fulfill the purpose of the food stamp program: to presently provide adequate nutrition to low-income households. *See Baum v. Yeutter,* 758 F.Supp. 423 (N.D.Ohio 1991) (award of retroactive benefits denied because it would not fulfill purpose of food stamp program, to provide adequate nutrition). Each party shall bear its own costs and attorney fees.

APPENDIX

*Energy Assistance Exclusion*—According to the Food Stamp Act, this exclusion provides that payments made for the purpose of furnishing energy assistance are not counted as income to food stamp recipients.

*LIHEAP*—Low Income Home Energy Assistance Program; The Secretary applies the energy assistance exclusion to payments made under this program, claiming that this program fights rapidly rising energy costs; however, this program now provides routine heating assistance.

*Rent*—Under the Housing Act, includes shelter and utilities; low-income tenants are required to pay no more than 30% of their income for rent.

*Utilities*—Includes electricity, gas, heating fuel, water, sewerage service, septic tank pumping/maintenance, sewer system hookup charges (after development), and trash and garbage collection.

*Utility Allowances*—The benefit that low-income tenants are allocated for their monthly utility bills; the amount of this benefit is not tailored to energy use of each individual unit, but is determined instead by a community-wide average.

*UR*—Utility reimbursement, a subcomponent of the utility allowance. When the utility allowance is greater than the amount a low-income tenant must pay for rent, HUD issues a UR to that tenant. This UR equals the amount that the utility allowance exceeds the tenant's rent, i.e., 30% of his income.