STATE OF NORTH CAROLINA v. CARL L. DeGRAFFENREIDT AND LONNIE DeGRAFFENREIDT

No. 7315SC104

(Filed 14 March 1973)

1. Conspiracy § 6— burning of school building — sufficiency of evidence of conspiracy

There was sufficient evidence of conspiracy by defendants and others to burn a Board of Education office building to warrant submission of the case to the jury where the evidence tended to show that defendants and others were engaged together for a considerable time on the evening in question in making fire bombs from a common source of gasoline, that the group talked of going to the school building, that the group did in fact go to the building at which time defendants were seen with fire bombs in their possession and that the building sustained considerable damage from a fire caused by fire bombs.

2. Conspiracy § 7— accomplice testimony — conspiracy definition — instructions proper

The trial court in a conspiracy to burn case gave proper instructions as to the scrutiny to be given an accomplice's testimony and as to the definition of conspiracy.

APPEAL by defendants from Cooper, Judge, 31 July 1972 Session of Superior Court held in ORANGE County.

Defendants were tried under separate bills of indictment charging them with the unlawful burning, on 26 March 1971, of the administrative offices of the Chapel Hill-Carrboro City Board of Education in violation of G.S. 14-59, and with conspiring with each other and various other individuals named in the indictments to burn the offices.

At the conclusion of the State's evidence, the court allowed the motion of Lonnie DeGraffenreidt for nonsuit as to the charge of unlawful burning. Defendants presented no evidence and the court submitted to the jury the charge of unlawful burning as to Carl DeGraffenreidt and the charges of conspiracy as to each defendant.

The jury found both defendants guilty of the conspiracy charges, but they were unable to reach a verdict on the charge of unlawful burning against Carl DeGraffenreidt. The court thereupon withdrew a juror and declared a mistrial as to that charge. Both defendants appeal to this Court from judgments of imprisonment entered upon the verdicts.

*Attorney General Morgan by Assistant Attorney General Magner for the State.*

*Paul, Keenan & Rowan by James E. Keenan for defendant appellants.*

GRAHAM, Judge.

[1] Defendants' first assignment of error is to the refusal of the court to nonsuit the charges of conspiracy. This assignment of error is overruled.

The State's evidence was sufficient to show that in response to a call in the early morning hours of 26 March 1971, members of the Chapel Hill Fire Department went to the Old Northside School which was located in Chapel Hill and was being used as administrative offices for the Chapel Hill-Carrboro City Board of Education. The building was constructed on two different levels and fires were burning on both levels. The fire chief found broken soft drink bottles about the premises of both levels. The bottles smelled of a flammable liquid. Rags smelling of the same liquid were found on one level of the building. Damage to the building was estimated at around $116,000.00.

An S.B.I. agent testified: "The fire in my opinion was caused by an inflammable liquid being placed in soft drink bottles, with a rag or some type of wick in the neck of the bottle, the rag was ignited and the bottle was thrown through the window, and when it broke the fire set the inflammable liquid afire. It is sometimes referred to as a Molotov Cocktail."

Nathaniel Jones, who was alleged in the indictments as a co-conspirator, testified for the State. He stated that on the date in question he met defendants and others at the Roberson Community Center in Chapel Hill. He observed several persons there filling bottles with gas and placing rags in them. The group went from there to Tintop, which is a community in Chapel Hill. The witness saw defendants and others making more gas bottles with rags in them at that time. He testified that he purchased the gas for the bottles. From Tintop, some of the group, including the witness and the defendants, went back to the Roberson Community Center and then to the administrative building in question. Defendants had bottles in both their hands. Jones testified: " . . . after things looked clear, the

bottles were lit. All I saw was that they had bottles in their hands that were burning. . . . I could see the two defendants. I was standing about twenty feet behind. . . . I saw them walk from where I was to where I saw them at the building." Jones stated that he left the scene when he saw lights from a car. He did not see any bottles thrown; however, he did hear windows break and could see the school flaming up.

Tommy Noell testified that he went to the Community Center on the evening of 26 March 1971 because he had heard that " . . . there was going to be a march uptown. . . . " Defendants and others were there. About 10:00 p.m. Nathaniel Jones came to the center with gas. The group then went to the community called Tintop and started mixing fire bombs. He saw both defendants mix the fire bombs but he did not remember how many. The group returned to the Community Center and people started getting fire bombs out of cars. The witness stated that "I saw Carl and Lonnie DeGraffenreidt [get] out of the car back at the center. I saw Carl and Lonnie DeGraffenreidt with fire bombs at that point. I saw them in their personal possession. They had fire bombs in the pockets and in their hands. Lonnie DeGraffenreidt had two in his pockets. He had them in his back pocket. One was in one and one in the other. He had two in his hands. He had four altogether. At that point I saw Carl DeGraffenreidt with four fire bombs. It was the same arrangement as Lonnie. . . . When I saw Carl and Lonnie at the center that second time, everybody started talking about going to Northside School." The witness saw Carl DeGraffenreidt the next day and Carl stated, "Man, I've landed all of mine."

Defendants insist that this evidence was insufficient to show that there was a union of wills for the unlawful purpose charged in the bill of indictment. We disagree.

Direct proof of the charge of conspiracy is rarely obtainable. *State v. Oliver*, 268 N.C. 280, 150 S.E. 2d 445. "In fact, circumstantial evidence is usually the only proof obtainable, and the results accomplished, the divergence of these results from the course which would ordinarily be expected, the situation of the parties and their relations to each other, together with surrounding circumstances and the inferences legitimately deducible therefrom, may furnish ample proof of conspiracy. . . ." 2 Strong, N. C. Index 2d, Conspiracy, § 6, p. 177.

The evidence here would permit the jury to find that defendants and others were engaged together for a considerable period on the evening in question in making fire bombs from a common source of gasoline. One witness testified that while defendants were present, "everybody started talking about going to Northside School." Defendants and others, armed with a substantial number of fire bombs, went to that school building, which at that time was being used as the administrative offices of the Chapel Hill-Carrboro City Board of Education. While defendants were present with their fire bombs, certain bombs were thrown through the windows of the school and caused a fire resulting in substantial damage. These findings certainly raise a legitimate and logical inference that defendants and the others entered into an unlawful scheme or agreement to unlawfully burn the building in question.

[2] Defendants' second assignment of error is to the court's failure to give the precise instructions requested by defendants as to the rule requiring careful scrutiny of an accomplice's testimony. The charge which the court gave with respect to this rule was a charge that has been approved by our Supreme Court. *See State v. Hairston* and *State v. Howard* and *State v. McIntyre*, 280 N.C. 220, 185 S.E. 2d 633. The additional statement which defendants desired read to the jury was more in the nature of an argument than an instruction. This assignment of error is also overruled.

Finally, defendants complain about the court's definition of conspiracy in its charge to the jury. The court's charge to the jury with respect to conspiracy was thorough and accurate in every respect. We fail to see where the jury could have been confused by any portions of these instructions.

It is our opinion that defendants had a fair trial which was free from prejudicial error.

No error.

Judges CAMPBELL and HEDRICK concur.