STATE OF NORTH CAROLINA v. DONALD PAUL BINDYKE

No. 7515SC60

(Filed 2 April 1975)

1. **Property § 4— conspiracy to destroy property by incendiary device — aiding and abetting destruction of property by incendiary device**
    The State's evidence was sufficient for submission to the jury on issues of defendant's guilt of felonious conspiracy to damage the real and personal property of a certain individual and with an attempt to damage that individual's personal property (an automobile) by the use of an incendiary device where it tended to show that there was an agreement between defendant and another to burn the bushes and fences around the victim's house and that defendant and another agreed to fire bomb the victim's automobile and the other person threw a Molotov cocktail at the automobile; the State's evidence was also sufficient for submission to the jury on the issue of defendant's guilt

of aiding and abetting damage to the real property of a second person by the use of an incendiary device where it tended to show that defendant instigated the burning of the victim's lawn by others and provided the gasoline and created a diversion while the others carried out the plan.

2. **Criminal Law § 3; Property § 4— instructions on attempt**

In a prosecution for attempt to damage personalty by use of an incendiary device, the trial court did not err in failing to include wilfulness in its definition of attempt where the court used the phrase "acted maliciously" which imports wilfulness.

3. **Criminal Law § 9— aiding and abetting — presence at crime scene — conspiracy — instructions**

In a prosecution for aiding and abetting damage to realty, the trial court did not err in failing to charge that in order to aid and abet one must be actually or constructively present during commission of the crime where the evidence tended to show defendant conspired with another to commit the crime and the court charged that if defendant so conspired he would be vicariously liable for the co-conspirator's attempt to carry out the conspiracy.

4. **Jury § 3— permitting alternate juror to go in jury room — absence of prejudice**

Defendant was not prejudiced when the court allowed the alternate juror to go into the jury room with the other jurors where the court corrected its mistake after only three or four minutes and the alternate did not participate in the deliberations and verdict.

APPEAL by defendant from *Chess, Judge.* Judgments entered 21 August 1974 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 20 March 1975.

Defendant was tried on a three-count information charging him with feloniously conspiring to damage the real and personal property of Harold G. Younger, with attempting to damage the personal property (an automobile) of Harold G. Younger by the use of an incendiary device, and with aiding and abetting damage to the real property of W. Hal Laughlin by the use of incendiary material.

The State's evidence tended to show the following: In June 1974 defendant was chief of police in Gibsonville and had come under public criticism. On 3 June 1974 he told Steve Montgomery, a Gibsonville policeman, and Gregory Moon that he was having trouble with the mayor, Harold G. Younger, and the Board of Aldermen. He talked about scare tactics he knew of in Pittsburgh, including sending coffins to people's homes and making threatening telephone calls. On 4 June 1974 defendant told Moon that "something needed to be done" about the mayor

and the aldermen and that "he had in mind a bomb." On June 5 Moon made a false telephone call reporting a drug overdose at the mayor's house, and he threw rocks through the mayor's picture window. On June 6 Moon had a load of concrete delivered to the mayor's house.

On June 9 defendant told Montgomery that "he didn't believe the Mayor was scared enough" and that "maybe the Mayor needed a fire in his bushes or on his fences." Montgomery repeated these remarks to Moon, and on June 10 Montgomery and Moon drove by the mayor's house and Moon said he would bomb the mayor's car with a Molotov cocktail. Moon and Bobby Glenn prepared the Molotov cocktail, and Moon threw it at the car, but the car did not burn. Later that night Moon telephoned Mayor Younger and Alderman Hal Laughlin and told them he was "Satan the Fire God."

On June 11 defendant told Montgomery that "he wondered how Laughlin would like a fire in his front yard." Montgomery repeated this to Moon. Defendant later told Montgomery that, in order to create a diversion while Moon was burning Laughlin's lawn that night, he would take a shot at himself and report it to Montgomery on the police radio. Montgomery was to turn on his blue light and siren as a signal to Moon to start the fire. Defendant poured some gasoline into milk jugs for Moon to use, and Montgomery delivered them to Moon. When Moon and a friend heard the sirens, they went to Laughlin's house and, using the gasoline, set fire to the lawn. Milk jug caps were found at the scene.

Defendant offered no evidence. The jury found him guilty on all three counts. From judgments imposing prison sentences, defendant appealed to this Court.

*Attorney General Edmisten, by Associate Attorney C. Diederich Heidgerd, for the State.*

*Harris & McEntire, by Mitchell M. McEntire, and Loflin, Anderson & Loflin, by Thomas F. Loflin III, for defendant appellant.*

ARNOLD, Judge.

[1] Defendant first contends that his motions for nonsuit should have been granted with respect to each of the charges against him. Viewing the evidence in the light most favorable

to the State, we find it ample to support convictions on all three counts. *See State v. Horton*, 275 N.C. 651, 170 S.E. 2d 466, *cert. denied* 398 U.S. 959, *rehearing denied* 400 U.S. 857 (1970); *State v. DeGraffenreidt*, 17 N.C. App. 550, 195 S.E. 2d 84, *cert. denied* 283 N.C. 394, 196 S.E. 2d 276 (1973). The jury could reasonably conclude that there was an agreement between defendant and Montgomery to burn the bushes and fences. Burning involves the use of an "incendiary device" as defined by G.S. 14-50.1 thus making the conspiracy a felony under G.S. 14-50 (b). The jury could also find that defendant and Moon agreed to fire bomb the mayor's car and that Moon threw a Molotov cocktail at the car. As a co-conspirator, defendant was vicariously liable for the acts of Moon in furtherance of the conspiracy. *State v. Kelly*, 243 N.C. 177, 90 S.E. 2d 241 (1955); *State v. Brooks*, 228 N.C. 68, 44 S.E. 2d 482 (1947). Finally, the evidence clearly supports the conclusion that defendant not only instigated the burning of Laughlin's lawn but provided the gasoline and created a diversion while others carried out the plan. Defendant's motions for nonsuit were properly overruled.

Defendant next contends that the court expressed an opinion in certain portions of its recapitulation of the evidence. This contention is without merit. Nothing in the record indicates that defendant brought his objections to the attention of the court. *See State v. Shutt*, 279 N.C. 689, 185 S.E. 2d 206, *cert. denied* 406 U.S. 928 (1972). Moreover, we do not see how these statements contain an expression of opinion or convey prejudicial suggestions to the jury.

[2, 3]   Defendant further contends that the court erred in failing to include willfulness in its definition of attempt and in failing to charge that in order to aid and abet one must be actually or constructively present during the commission of the crime. While the court in its definition may not have used the word "willfully," it expressed that concept by use of the phrase "acted maliciously," which clearly imports willfulness. If defendant conspired with Moon, he was vicariously liable for Moon's attempt to carry out the conspiracy, and the court so instructed. *See State v. Kelly, supra; State v. Brooks, supra.* Moreover, the evidence showed that defendant aided in the burning of Laughlin's lawn not by his presence but by his absence, thereby creating a diversion.

[4]   Finally, defendant contends that the court erred in allowing the alternate juror to go into the jury room with the other

jurors. Although the alternate juror was not discharged, as required by G.S. 9-18, when the jury retired, the record shows that the court corrected its mistake after only three or four minutes had elapsed. Unlike the case of *State v. Alston,* 21 N.C. App. 544, 204 S.E. 2d 860 (1974), the alternate did not participate in the deliberation and verdict of the other twelve. His brief visit to the jury room was not prejudicial.

In defendant's trial, and in the judgment appealed from, we find

No error.

Chief Judge BROCK and Judge PARKER concur.