TAMMY CARPENTER, PETITIONER-APPELLEE v. N.C. DEPT. OF HUMAN
RESOURCES, RESPONDENT-APPELLANT

No. 9118SC349

(Filed 18 August 1992)

**Social Security and Public Welfare § 1 (NCI3d) — food stamps — income — exclusion of HUD utility reimbursements**

Monthly utility reimbursement payments received by petitioner pursuant to a HUD housing assistance program should be excluded from income for the purpose of calculating petitioner's food stamp benefits.

**Am Jur 2d, Welfare Laws §§ 26-27.**

**What constitutes income, under 7 USCS sec. 2014(d), (k), for purposes of determining eligibility for food stamps. 102 ALR Fed 160.**

APPEAL by respondent from an order entered 19 January 1991 by *Judge A. Leon Stanback, Jr.* in GUILFORD County Superior Court. Heard in the Court of Appeals 14 January 1992.

Petitioner lives in housing which is subsidized under Section 8 of the United States Housing Act, 42 U.S.C. § 1437F. The Section 8 program is administered by the Department of Housing and Urban Development (HUD). Under the HUD program, petitioner's rent is fully subsidized, and she receives a monthly utility reimbursement check from the landlord for utility bills paid directly by her to the utilities. In calculating petitioner's income to determine the amount of food stamp benefits she is eligible to receive, the Guilford County Department of Social Services includes the utility reimbursement check as income.

In April 1990 petitioner requested an appeal pursuant to N.C. Gen. Stat. § 108A-79(a) in order to challenge the Guilford County Department of Social Services' (county DSS) practice of including her utility reimbursement payments she received under the Housing Act, 42 U.S.C. § 1437 *et seq.* as income in calculating her food stamp benefits. A hearing was held before J. McRay Harward, Hearing Officer, on 19 July 1990. The hearing officer upheld the county DSS practice of including HUD utility reimbursement checks in computing food stamp benefits. Pursuant to N.C. Gen. Stat. § 108A-79(k), petitioner then sought judicial review of the agency

decision in Guilford County Superior Court. The trial court reversed the decision of the state hearing officer and held that Section 6187.76G of the North Carolina Department of Human Resources Food Stamp Certification Manual violated 7 U.S.C. 2014(d)(11) in that it fails to list utility rebates as a payment or allowance made for the purpose of energy assistance. From that order, respondent appeals.

*Attorney General Lacy H. Thornburg, by Associate Attorney General Marilyn A. Bair, for respondent-appellant.*

*Central Carolina Legal Services, Inc., by Stanley B. Sprague and Sorien Schmidt, for petitioner-appellee.*

ORR, Judge.

This case involves the interpretation of a federal regulation by a state agency. The Secretary of Agriculture has interpreted the regulation; however, Federal courts which have reviewed this issue are in disagreement as to whether the interpretation is reasonable and based on a permissible construction of the statute. The State has chosen to follow the Secretary's interpretation of the regulation which is challenged by petitioner.

In its simplest form, the issue on appeal is whether utility reimbursement payments authorized under Section 8 of the Housing Act should be excluded as income for the purpose of calculating food stamp benefits. Respondent contends that the Secretary of Agriculture (Secretary) has correctly interpreted 7 U.S.C. § 2014(d)(11) so that these Section 8 utility reimbursements should not be excluded. Respondent further contends that the State, in administering the Food Stamp Act, must adhere to the regulation and policy promulgated by the Secretary. Therefore, the State Food Stamp Manual reflecting the Secretary's policy does not violate 7 U.S.C. § 2014(d)(11).

### Standard of Review

It is well settled that when a court reviews an agency's interpretation of a statute it administers, the court should defer to the agency's interpretation of the statute. This is so as long as the agency's interpretation is reasonable and based on a permissible construction of the statute. *See, e.g., West v. Bowen,* 879 F.2d 1122 (3d Cir. 1989); *see also Wheller v. Heckler,* 787 F.2d 101, 104 (3d Cir. 1986) (deference accorded the Secretary's construction as

long as it is reasonable and not arbitrary and capricious); *Pennsylvania v. United States*, 752 F.2d 795, 798 (3d Cir. 1984) (reviewing court must uphold agency's interpretation if it is reasonable, even if court believes some other policy preferable). In reviewing the agency's construction of the statute, the court must ask two questions:

> First . . . is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction of the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694, 702-03 (1984).

### The Food Stamp Act

The statute being interpreted in this case is 7 U.S.C. § 2011 *et seq.*, commonly referred to as The Food Stamp Act. The Food Stamp Act established a federally funded, state administered program to assist eligible individuals with the purchase of food. Participants receive coupons to use in purchasing food. Household income for purposes of the food stamp program includes "all income from whatever source" subject to certain exemptions and deductions which are found in 7 U.S.C. § 2014(d).

### The Housing Act

Under the Housing Act, 42 U.S.C. § 1437, *et seq.*, housing assistance programs are operated by Public Housing Authorities under contract with the Department of Housing and Urban Development (HUD) to remedy "the unsafe and unsanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income. . . ." 42 U.S.C. § 1437. The programs include low-rent public housing projects and various rental assistance programs in which tenants lease property from private landlords

with their rent being subsidized by HUD. The Section 8 housing assistance payment program, in which petitioner participates, provides assistance payments for residents renting units from private landlords and other non-governmental entities. 42 U.S.C. § 1437f.

In either case, the rent which may be charged for a unit can amount to no more than 30% of a resident's adjusted gross income. 42 U.S.C. § 1437a(a)(1); 24 C.F.R. §§ 813.107 and 913.107. All housing costs, including utilities, are covered by the rent charged. 24 C.F.R. §§ 882.105(a) (Section 8), 965.472 (public housing). *See also* 42 U.S.C. § 1437f(c)(1) (rent under Section 8 includes "utilities and all maintenance and management charges"). The HUD definition of utilities includes "electricity, gas, heating, fuel, water and sewerage services, and trash and garbage collection." 24 C.F.R. § 965.472.

Section 8 tenants are required by the landlord to pay their utility bills directly to the utility companies. To determine the amount of a tenant's utilities, the landlord determines a community-wide utility allowance (UA) for each size apartment. In order to comply with the 30% cap, the landlord credits the resident with the amount of the UA for his unit, regardless of the amount of the actual utility bill. This reduces the resident's rental obligation to the landlord. In cases such as petitioner's, where the resident's income and rental obligation are exceeded by the UA, the landlord must pay the tenant what is known as a "utility reimbursement." 24 C.F.R. 813.102 (1989).

At issue here is whether the utility reimbursement, which in this case is in the form of a check made out to petitioner, is properly exempted from gross monthly income for the purpose of calculating the food stamp benefit. As previously stated, while several federal courts have addressed this question with no ultimate resolution reached, the decisions reflect a split of authority regarding whether the Secretary has reasonably construed 7 U.S.C. § 2014(d)(11) as not excluding from income utility reimbursements such as petitioner receives. *See, e.g., West*, 879 F.2d 1122 (holding Secretary's construction unreasonable), *but cf. Larry v. Yamauchi*, 753 F. Supp. 784 (1990) (affirming Secretary's construction that HUD utility reimbursements are properly included as income for purposes of calculating food stamp benefit). The statute exempts from income

> any payments or allowances made for the purpose of providing energy assistance (A) under any Federal law, or (B) under

any State or local laws, designated by the State or local legislative body authorizing such payments or allowances as energy assistance. . . .

Respondent, relying on *Larry*, 753 F. Supp. 784, argues that the plain language of the statute does not include HUD section 8 utility payments such as petitioner receives because the exclusion "clearly limits the exclusion to payments or allowances for energy costs as opposed to *non*-energy costs." *Larry* at 792. Even if Section 8 utility payments were limited to energy costs, respondent argues that the legislative history of the energy exclusion demonstrates that utility payments provided under the Housing Act are "not the type of payments which Congress intended to exclude when it enacted [the] provision." Respondent takes the position that only those payments that are specifically designated to offset increases in the cost of energy are to be excluded. *See Larry* at 796.

Based on our review of the statutory language and legislative history, however, we find the reasoning of the *West* court persuasive on the issue and hold that utility reimbursements are properly excluded from income used to calculate petitioner's food stamp benefit. In *West*, the Third Circuit U.S. Court of Appeals pointed out that the primary sponsor of the energy exclusion stated:

> All Federal payments for the purpose of providing energy assistance would continue to be excluded as income, whether or not specifically designated for energy assistance. It is the purpose for which they are given and not their label that governs.

*West* at 1131, *citing* 127 Cong. Rec. H9878 (December 16, 1981). Furthermore, while Federal programs enacted to address the increasing cost of energy were the impetus for creating the energy exemption, the statutory language and legislative history demonstrate that Congress did not intend to restrict the exemption for new energy programs only. *Id.* at 1131. Additional support for this position is found in the amendment of the Food Stamp Act's energy exemption by way of the Hunger Prevention Act of 1988. The purpose of the amendment, which changed the order of the language of the energy exemption, was

> . . . to clarify that USDA and local agencies do not need to conduct an inquiry into the purpose of a federal statute before excluding federal "payments for the purpose of energy

assistance." The law as written could be read to require this analysis.

The crucial question should be whether the purpose of the payment is energy assistance, not whether the statute, as a whole is primarily for energy assistance or includes other human services as well. . . .

*Id.* at 1131 *citing* S. Rep. 100-397 (June 25, 1988) at 28, 29, *reprinted in* 1988 United States Code, Congressional and Admin. News. 2239 at 2266, 2267.

Like the court in *West*, we conclude that it was the intent of Congress that all payments for energy assistance be excluded from income when calculating food stamp benefits. To the extent that Section 6187.7G of the North Carolina Department of Human Resources Food Stamp Certification Manual fails to include utility reimbursements as excluded income, it violates 7 U.S.C. § 2014(d)(11). The decision of the trial court is

Affirmed.

Judges EAGLES and COZORT concur.