AIR-A-PLANE CORPORATION, Petitioner v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, Respondent

No. 9410SC480

(Filed 7 March 1995)

**1. Sanitation and Sanitary Districts § 8 (NCI4th)— failure to determine whether solid waste hazardous—burden on petitioner—assessment of penalty proper**

The Dept. of E.H.N.R. could appropriately assess a penalty against petitioner for failing to determine whether a solid waste was hazardous under 40 C.F.R. § 262.11 even though testing subsequent to the penalty period showed the solid waste was non-hazardous, since petitioner had the burden of determining whether its solid waste shipped to North Carolina in drums was hazardous by either testing the material or by applying knowledge of the process used.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 455 et seq.**

**2. Sanitation and Sanitary Districts § 8 (NCI4th)— showing waste nonhazardous—method of compliance with regulation—no exceeding of authority by Dept. of E.H.N.R.**

There was no merit to petitioner's contention that the Dept. of E.H.N.R.'s actions exceeded its statutory authority because it did not allow petitioner to choose the means of compliance under 40 C.F.R. § 262.11, since petitioner was given an opportunity to provide the Dept. of E.H.N.R. with a proper waste determination; petitioner neither performed a chemical analysis on the waste nor applied knowledge of the characteristics of the waste, *i.e.*, its components, in light of the processes used to produce the waste; and 40 C.F.R. § 262.11(c)(2) requires more than just general statements made by petitioner that its barrels contained paint residues and similar materials which it "just knew" were nonhazardous or that petitioner received information of the paints' constituents from some paint companies but not all of the companies which supplied paints and similar materials to petitioner.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 455 et seq.**

**3. Sanitation and Sanitary Districts § 8 (NCI4th)— nonhazardous waste—issuance of compliance order—assessment of penalty—no unlawful procedure**

In issuing a compliance order and assessing a $225,000 penalty against petitioner, the Dept. of E.H.N.R. did not use unlawful procedure in its notification of violation or in its calculation of the amount of the civil penalty.

**Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 455 et seq.**

Appeal by petitioner from order entered 28 February 1994 by Judge Orlando F. Hudson in Wake County Superior Court. Heard in the Court of Appeals 26 January 1995.

*Carol M. Schiller for petitioner-appellant.*

*Attorney General Michael F. Easley, by Assistant Attorney General Judith Robb Bullock, for respondent-appellee.*

GREENE, Judge.

Air-A-Plane Corporation (petitioner) appeals from an order signed and filed on 28 February 1994 in Wake County Superior Court,

affirming the decision of the North Carolina Department of Environment, Health and Natural Resources (DEHNR) which upheld the issuance of a compliance order and $225,000.00 administrative penalty by the Solid Waste Management Division of DEHNR (the Division) against petitioner for violating 40 C.F.R. § 262.11.

Petitioner, a Virginia corporation with its main plant in Norfolk, Virginia, operates a plant in Elm City, Wilson County, North Carolina, which assembles air support systems, such as air conditioners, as ground support equipment for aircraft. On 31 May 1991, William L. Meyer (Mr. Meyer), Director of the Division, issued a compliance order with an administrative penalty for $225,000.00 (the Order) against petitioner for violating 40 C.F.R. § 262.11, part of the federal Resource Conservation and Recovery Act (RCRA), codified at 15A N.C.A.C. 13A.0007, which provides that a "person who generates a solid waste, as defined in 40 CFR 262.2, must determine if that waste is a hazardous waste using the following method":

(a) He should first determine if the waste is excluded from regulation under 40 CFR 261.4.

(b) He must then determine if the waste is listed as a hazardous waste in subpart D of 40 CFR part 261.

(c) For purposes of compliance with 40 CFR part 268, or if the waste is not listed in subpart D of 40 CFR part 261, the generator must then determine whether the waste is identified in subpart C of 40 CFR part 261 by either:

(1) Testing the waste according to the methods set forth in subpart C of 40 CFR part 261, or according to an equivalent method approved by the Administrator under 40 CFR 260.21; or

(2) Applying knowledge of the hazard characteristic of the waste in light of the materials or the processes used.

40 C.F.R. § 262.11. The Order stated petitioner violated 40 C.F.R. § 262.11 "in that it did not determine if its waste is a hazardous waste." The penalty period was from 7 February 1991 until 18 March 1991, and the penalty was calculated at $5,000.00 per day plus a base penalty of $25,000.00. An informal conference between petitioner and the Division was held on 4 April 1991, but the Order was not changed. Petitioner contested the Order and filed a request for an administrative hearing with the Office of Administrative Hearings (OAH) on 3 July 1991. The Administrative Law Judge (ALJ) limited the hearing to

**AIR-A-PLANE CORP. v. N.C. DEPT. OF E.H.N.R.**

[118 N.C. App. 118 (1995)]

whether DEHNR erred in determining petitioner had not made a waste determination required by 40 C.F.R. § 262.11 as of 7 February 1991 and continuing through 18 March 1991 and limited testimony to those events that occurred during the penalty period from 7 February 1991 to 18 March 1991.

The evidence is as follows: On 7 February 1991, Larry David Perry (Mr. Perry), a compliance supervisor for DEHNR, and Mike Williford (Mr. Williford), a waste management specialist for DEHNR, met with David M. Shank (Mr. Shank), petitioner's Elm City plant manager, for an on-site visit and an investigation of a complaint that petitioner's plant site had approximately 150 to 160 abandoned and leaking drums on it. Some of the drums, which were shipped from petitioner's Virginia facility, were leaking, some were corroding and were not completely closed, some were bulging, material had run down the side of a drum, yellow material had leaked in front of and underneath a wooden pallet on which some of the drums were stored, one drum was labeled SOLV/H20, one drum was labeled with a DOT flammable label, and the remaining drums were not labeled. Mr. Shank informed Mr. Williford and Mr. Perry that he did not know what was in all the drums, but to the best of his knowledge, the kinds of materials that would be in the drums were paint thinners, paint residues, lubricating oils, engine oils, hydraulic oils, and similar materials. Mr. Perry and Mr. Williford informed Mr. Shank petitioner needed to do a chemical analysis on the contents of the drums and send the results to DEHNR because they "had to have laboratory analysis or some information to identify this material." Petitioner did not provide DEHNR with any information regarding the waste analysis of the drums between 7 February 1991 and 18 March 1991 and had not done a waste determination under 40 C.F.R. § 262.11 as of 4 April 1991, the date of the informal conference.

William Shepheard (Mr. Shepheard), the executive chief operating officer of petitioner, testified he "just knew" its industrial wastes were nonhazardous because DuPont and Sherwin Williams told him the components of the paints were nonhazardous; however, he admitted he might have received other paints and paint thinners from Exxon or "a house of similar nature." He also stated that because petitioner used recycled drums, any labels on the drums might not be what the drums contained. Mr. Shepheard testified he informed DEHNR at the 4 April 1991 informal conference about the nature of petitioner's business and that its wastes were nonhazardous; however, no one told DEHNR petitioner's wastes were nonhazardous

prior to 7 February 1991 because petitioner "[was]n't required to do it and [petitioner] did not do it."

Although Mr. Meyer was not present at the 7 February 1991 inspection, he reviewed the entire file on petitioner and spoke to his staff before deciding the amount of penalty to impose. He considered the mandatory factors to use in assessing a penalty such as the degree and extent of harm, the cost of rectifying the damage, past compliance history, any good faith efforts on the part of petitioner, whether other organisms were potentially threatened, and the potential threat to environmental media such as groundwater, surface water and soil. Mr. Meyer testified that the Environmental Protection Agency (EPA) drafted a policy which North Carolina adopted to determine whether violations were major or minor. Mr. Meyer testified this policy is only a guidance and "the statutes and rules" prevail.

In assessing the amount of the penalty, Mr. Meyer considered the violation to be major and a "continuing violation for forty days and a penalty of five thousand dollars ($5,000.00) per day was used for this forty-day noncompliance period, in addition to the initial penalty matrix, which was twenty five thousand dollars ($25,000.00)." Mr. Meyer testified he signed the Order on 31 May 1991, and that the enforcement meeting with his staff probably took place sometime in May of 1991.

DEHNR, in its final decision which adopted the ALJ's recommended decision, upheld the $225,000.00 penalty assessed against petitioner. DEHNR, in addition to finding there were approximately 150 to 160 drums at the Elm City plant, some leaking, some corroding, some bulging, most not labeled, but one labeled flammable, made the following relevant findings of fact:

23. Between February 7, 1991, the date of the initial inspection, and March 18, 1991, the closing date of the penalty period, neither Mr. Shank nor anyone else from Air-A-Plane provided Mr. Williford with any information regarding the waste analysis of the [approximately 150 to 160] drums at the site.

24. There is no evidence that any representative from the Petitioner provided any representative of the Respondent with specific information regarding the contents of the drums during the penalty period.

. . . .

36. Mr. Meyer concluded that Air-A-Plane exhibited a total lack of knowledge as to what should have been done to identify the waste material and, therefore, there was a substantial (major) degree of non-compliance and deviation from the regulations.

37. Mr. Meyer decided that the violation was continuing in nature and he imposed a $5,000 daily penalty in addition to the $25,000 base penalty. The daily penalty ran from the date of the inspection, February 7, 1991 through March 18, 1991, the day after the penalty was computed.

. . . .

39. If Mr. Meyer had been provided with information prior to the penalty assessment that the material in the drums was not hazardous waste, this information would not have affected the imposition of or the amount of the penalty.

DEHNR concluded petitioner had produced a solid waste and failed to make a waste determination as required by 40 C.F.R. § 262.11, and DEHNR had properly followed statutory and regulatory guidelines in assessing the penalty.

Petitioner filed a petition for judicial review pursuant to Chapter 150B of the North Carolina General Statutes to Wake County Superior Court. By order filed 28 February 1994, the trial court, after "having fully reviewed [DEHNR]'s Findings of Fact, Conclusions of Law and Decision, the entire administrative record and the Petition for judicial review and having considered the brief and oral argument," affirmed the final contested case decision of DEHNR.

While our review of DEHNR's decision is limited to petitioner's assignments of error to the superior court's order, *Watson v. N.C. Real Estate Comm'n, Inc.*, 87 N.C. App. 637, 640, 362 S.E.2d 294, 296 (1987), *cert. denied*, 321 N.C. 746, 365 S.E.2d 296 (1988), review is further limited by the issues raised in the petition for judicial review made to the superior court. Issues not raised in the petition for judicial review cannot be asserted as a basis in this Court for reversing the agency's decision. Furthermore, any issue properly raised but not discussed in the brief to this Court is deemed abandoned. N.C.R. App. P. 28.

Petitioner's petition for judicial review, assignments of error to the superior court's order, and brief raise the issues of whether (I) a penalty can be assessed for failing to determine whether a solid waste is hazardous or not under 40 C.F.R. § 262.11 where testing subsequent

to the penalty period shows the solid waste is nonhazardous; (II) DEHNR's actions exceeded its statutory authority; and (III) there was unlawful procedure (A) in DEHNR's notification of violation and (B) in DEHNR's calculation of the amount of the civil penalty.

N.C. Gen. Stat. § 150B-51(b) provides that this Court, in reviewing a final agency decision, may:

> reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Affected by other error of law;
>
> (5) Unsupported by substantial evidence . . . in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C.G.S. § 150B-51(b) (1991); *Brooks v. Ansco & Assocs.*, 114 N.C. App. 711, 716-17, 443 S.E.2d 89, 91-92 (1994); *Teague v. Western Carolina Univ.*, 108 N.C. App. 689, 691, 424 S.E.2d 684, 686, *disc. rev. denied*, 333 N.C. 466, 427 S.E.2d 627 (1993). Where petitioner alleges the agency's decision is based upon an error of law, in excess of the agency's statutory authority, or made upon unlawful procedure, *de novo* review is required. *See Brooks, Comm'r of Labor v. Rebarco, Inc.*, 91 N.C. App. 459, 372 S.E.2d 342 (1988) (error of law); *Commissioner of Ins. v. Rate Bureau*, 300 N.C. 381, 269 S.E.2d 547 (addressing excessive statutory authority and unlawful procedure), *reh'g denied*, 301 N.C. 107, 273 S.E.2d 300 (1980). Where petitioner alleges a constitutional violation by the agency, *de novo* review is also required because "the court is the final arbiter and is free to substitute judgment." *See* Charles H. Koch, Jr., *2 Administrative Law and Practice* 140 § 9.20 (1985 & Supp. 1995). Where, however, petitioner alleges the agency's decision is not supported by substantial evidence or is arbitrary and capricious, review of the whole record is required to determine if the agency's decision was supported by substantial evidence. *Walker v. N.C. Dep't of Human Resources*, 100 N.C. App. 498, 503, 397 S.E.2d 350, 354 (1990), *disc. rev. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991).

**AIR-A-PLANE CORP. v. N.C. DEPT. OF E.H.N.R.**

[118 N.C. App. 118 (1995)]

I

**[1]** Several of petitioner's arguments center around its contention that because the solid waste it produces is nonhazardous, there can be no violation of 40 C.F.R. § 262.11. Based on this contention, petitioner argues that because it was not allowed to introduce evidence that testing after 18 March 1991 showed its solid waste to be nonhazardous, it was denied a fair and adequate hearing in violation of due process, DEHNR exceeded its authority, DEHNR's decision was affected by an error of law, a penalty cannot be assessed under 40 C.F.R. § 262.11 if the waste is nonhazardous, and DEHNR's decision was arbitrary and capricious. We disagree.

DEHNR argues, and we agree that 40 C.F.R. § 262.11 requires **any person** who generates a **solid waste** to make a determination, by either testing the waste or applying knowledge in light of the materials or processes used, whether the waste is hazardous or not. 40 C.F.R. § 262.11; *see Carpenter v. N.C. Dep't of Human Resources,* 107 N.C. App. 278, 279, 419 S.E.2d 582, 584 (1992) (court should defer to agency's interpretation of statute as long as interpretation is reasonable and based on a permissible construction), *disc. rev. denied,* 333 N.C. 533, 427 S.E.2d 874 (1993). The purpose of this regulation is to arm a person with knowledge concerning the solid waste he or she produces, which may then be subject to RCRA or other permitting requirements. If the solid waste produced is hazardous, the person will be subject to RCRA with some enumerated exceptions; however, if the solid waste produced is nonhazardous, the person will not be subject to RCRA. EPA explained:

> The Agency believes that there are many people who suspect, but are not sure, that their activities are subject to control under the RCRA Subtitle C rules. This appendix is written for these people. . . .

> The first question which such a person should ask himself is: "Is the material I handle a solid waste?" If the answer to this question is "No", then the material is not subject to control under RCRA and, therefore, the person need not worry about whether he should comply with the Subtitle C rules. . . .

> If a person has determined that his material is a "solid waste", the next question he should ask is: "Is the solid waste I handle a hazardous waste?"

260 C.F.R. app. I. The agency continues to explain the steps to take if a person determines the solid waste is hazardous. Therefore, the burden is placed upon a person who generates a solid waste to make a determination whether that waste is hazardous or not and whether the person will be subject to special rules and regulations governing hazardous wastes. Thus, petitioner had the burden of determining whether its solid waste shipped to North Carolina in drums was hazardous or not by either testing the material or by applying knowledge of the processes used, and failure to do so can result in the assessment of a penalty against petitioner under N.C. Gen. Stat. § 130A-22(a).

DEHNR's compliance order stated that petitioner violated 40 C.F.R. § 262.11 from 7 February 1991 through 18 March 1991 and assessed a penalty for that time period. *See* 15A N.C.A.C. 13 (Solid Waste Management). Petitioner does not dispute that the materials contained in the barrels in question were solid waste as defined in 40 C.F.R. § 261.1 or that it is a "person" within the meaning of N.C. Gen. Stat. § 130A-290(22). *See* N.C.G.S. § 130A-290(22) (1989) (person means "an individual, corporation, company, association, partnership, unit of local government, State agency, federal agency or other legal entity"); 15A N.C.A.C. 13A.0002(b) (40 C.F.R. § 260.10, Definitions, has been incorporated by reference except that definition for "person" is defined by G.S. 130A-290). Because under 40 C.F.R. § 262.11, it is irrelevant whether petitioner's solid waste ultimately tested nonhazardous and because the subject matter of the compliance order was whether petitioner had been in violation of the requirements of 40 C.F.R. § 262.11 from 7 February 1991 through 18 March 1991, the period for which DEHNR assessed a penalty, the ALJ did not err in limiting the evidence to that occurring before 18 March 1991. For the same reasons, DEHNR did not act in excess of its statutory authority by assessing a penalty without hearing evidence after 18 March 1991, there was no error of law in excluding evidence that the contents of the barrel had been tested after 18 March 1991 and was determined to be nonhazardous, and the ALJ properly limited the hearing to one issue.

II—Exceeding Statutory Authority

[2] Petitioner argues DEHNR's actions exceeded its statutory authority because it did not allow petitioner to choose the means of compliance under 40 C.F.R. § 262.11 because petitioner had applied its

knowledge of the solid waste it produced sufficient to satisfy the requirements of 40 C.F.R. § 262.11(c)(2). We disagree.

In this case, the evidence shows that on 7 February 1991, petitioner was unable to provide DEHNR with a proper waste determination under 40 C.F.R. § 262.11 although given the opportunity to do so. 40 C.F.R. § 262.11 requires a producer of solid waste to either perform a chemical analysis on the waste or apply knowledge of the characteristics of the wastes, i.e., its components, in light of the processes used to produce the waste. 40 C.F.R. § 262.11. The evidence shows petitioner had not performed a chemical analysis as of 18 March 1991. Furthermore, we agree with DEHNR's interpretation of 40 C.F.R. § 262.11(c)(2) that it requires more than just the general statements made by petitioner that the barrels contained paint residues and similar materials which it "just knew" were nonhazardous or that petitioner received information of the paints' constituents from some paint companies but not all of the companies which supplied paints and similar materials to petitioner. 40 C.F.R. § 262.11(c)(2); *see Carpenter*, 107 N.C. App. 278, 419 S.E.2d 582 (court should defer to agency interpretation where interpretation is reasonable). The statements by Mr. Shank and Mr. Shepheard did not demonstrate the characteristics or exact chemical components of the paint residues and similar materials contained in the barrels and therefore were inadequate under 40 C.F.R. § 262.11(c)(2). The evidence therefore shows that petitioner did not make a proper waste determination prior to 7 February 1991 or from 7 February 1991 to 18 March 1991, the penalty period, sufficient to satisfy the requirements of 40 C.F.R. § 262.11. DEHNR, therefore, did not exceed its statutory authority in issuing the Order, and the trial court did not err in finding DEHNR did not exceed its statutory authority.

### III—Unlawful Procedure

### A

[3] Petitioner argues there was unlawful procedure because DEHNR "failed to provide notice of violation to Petitioner." We disagree.

40 C.F.R. § 262.11 places the burden on "any person" who generates solid waste to determine whether it is hazardous or not. Although DEHNR did not prepare an inspection report and did not issue a notice of violation, there is no statutory requirement to do such before issuing a compliance order pursuant to 40 C.F.R. § 262.11.

In any event, both Mr. Williford and Mr. Perry informed Mr. Shank on 7 February 1991 that the material would have to be tested to determine if it was hazardous waste or not because he had generated a solid waste. Therefore, petitioner was on notice on 7 February 1991 that it needed to identify the solid waste stored in the drums at the Elm City plant in order to determine whether or not it was a hazardous waste, and the trial court did not err in finding there was no unlawful procedure in notifying petitioner.

B

Petitioner next argues there was unlawful procedure because DEHNR "failed to follow its own guidelines for calculating the amount of the penalty." We disagree.

N.C. Gen. Stat. § 130A-22 provides that an agency

may impose an administrative penalty on a person who violates Article 9 [Solid Waste Management Act] of this Chapter, rules adopted by the Commission pursuant to Article 9, or any order issued under Article 9. Each day of a continuing violation shall constitute a separate violation. The penalty shall not exceed five thousand dollars ($5,000) per day in the case of a violation involving nonhazardous waste. The penalty shall not exceed twenty-five thousand dollars ($25,000) per day in case of a first violation involving hazardous waste as defined in G.S. 130A-290.

N.C.G.S. § 130A-22(a) (1989) (amendments have not affected this portion of the statute). Our General Assembly recognized that a person may violate 40 C.F.R. § 262.11 even though he or she produces a nonhazardous solid waste by providing DEHNR may impose a penalty not to exceed $5,000.00 per day **in the case of a violation involving nonhazardous waste**. N.C. Gen. Stat. § 130A-22(a).

Under N.C. Gen. Stat. § 130A-22(d), DEHNR must, "[i]n determining the amount of the penalty . . . consider the degree and extent of the harm caused by the violation and the cost of rectifying the damage." N.C.G.S. § 130A-22(d). In addition to these two statutory standards, DEHNR promulgated the following standards pursuant to N.C. Gen. Stat. § 130A-22(f), which requires DEHNR to "adopt rules concerning the imposition of administrative penalties":

In determining the amount of the administrative penalty, the Division shall consider the following standards:

AIR-A-PLANE CORP. v. N.C. DEPT. OF E.H.N.R.

[118 N.C. App. 118 (1995)]

(1) . . . (a) For a violation of the Solid Waste Management Act, Article 9 of Chapter 130A of the North Carolina General Statutes, and the rules adopted thereunder:

(i) type of violation;

(ii) type of waste involved;

(iii) duration of the violation;

(iv) cause . . .

(v) potential effect on public health and the environment;

(vi) effectiveness of responsive measures taken by the violator;

(vii) damage to private property.

15A N.C.A.C. 13B.0702(1)(a).

The evidence in this case shows that in assessing the administrative penalty, Mr. Meyer considered the mandatory factors under both statute and rules promulgated by DEHNR. Furthermore, in light of not knowing the contents of the drums when the assessment was made, the penalty was made based on the maximum of $5,000.00 per day for a nonhazardous material. The trial court, therefore, did not err in finding there was no unlawful procedure in DEHNR's calculation of the penalty against petitioner.

Petitioner argues DEHNR's decision was arbitrary and capricious. Because, however, petitioner bases this contention on arguments we have previously discussed and rejected in this opinion, we also reject petitioner's contention DEHNR's decision was arbitrary and capricious. For these reasons, the decision of the Superior Court, affirming DEHNR's final decision to assess a penalty against petitioner is

Affirmed.

Judges EAGLES and WALKER concur.