IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-15

Filed 17 December 2025

Pitt County, No. 22 CR 356856-730

STATE OF NORTH CAROLINA

      v.

MARTY DRU SMITH

Appeal by Defendant from judgment entered 20 February 2024 by Judge Cy A. Grant, Sr. in Pitt County Superior Court. Heard in the Court of Appeals 25 September 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Lisa Bradley, for the State.*
>
> *Attorney Jarvis John Edgerton IV, for Defendant–Appellant.*
>
> MURRY, Judge.

Marty D. Smith (Defendant) appeals the trial court's judgment entered upon a jury verdict convicting him of two counts of taking indecent liberties with a child. Defendant argues that he is "entitled to a new trial because his constitutional right to trial by a jury of twelve was violated when an alternate juror was initially sent back with the jury for deliberations." For the following reasons, this Court holds no error.

## I. Background

On 1 September 2023, a grand jury indicted Defendant on two counts of taking indecent liberties with a child. Following Defendant's not-guilty pleas, this case came for a jury trial on 19 February 2024. After the presentation of evidence and jury instructions on each charge, the trial court explained to the jurors how to proceed before excusing them to the jury room:

> The very first thing that you are to do upon retiring is to select a foreperson. The foreperson is someone who will assist and direct you in your deliberations. Once I think you've had an opportunity to select a foreperson I will have the bailiff take into you the verdict sheet.

Upon excusing the jurors, the trial court instructed them, "Do not begin discussing the case until you have selected a foreperson." The transcript indicates the following exchange after the jurors departed:

> THE COURT: Any objections?
>
> DEFENSE COUNSEL: Your Honor, you sent the alternate back with the twelve.
>
> . . . .
>
> STATE: No objections and nothing else, Your Honor.
>
> THE COURT: Let the record reflect that I'm handing the verdict sheet along with a pen and pad to [the bailiff]. . . take these to the jury.
>
> (Jury deliberating.)

(Brackets omitted.) The record does not indicate any other objections or inquiries until the jury gave its verdict, which found Defendant guilty of both counts of taking indecent liberties with a minor. The trial court consolidated the judgments and ordered consecutive sentences of imprisonment. Defendant timely appealed.

- 2 -

## II.     Jurisdiction

This Court has jurisdiction over Defendant's appeal of a final judgment of the trial court under N.C.G.S. §§ 7A-27, 15A-1444 because the trial court entered final judgment upon a jury's guilty verdict to which Defendant pled not guilty. *See* N.C.G.S. § 7A-27(b) (2025) (final judgment of a trial court); *id.* § 15A-1444(a) (pled not guilty but found guilty).

## III.     Analysis

On appeal, Defendant argues that he "is entitled to a new trial because his constitutional right to trial by [a] jury of twelve was violated when an alternate juror was initially sent back with the jury for deliberations." As a threshold matter, we address whether Defendant's argument is preserved for our review despite his failure to object on constitutional grounds. *See* N.C. R. App. P. 10(a)(1). Recognizing that "the jury is perhaps *the* hallmark of the American criminal justice system," our Supreme Court has held that "issues related to the structure of the jury that found defendant guilty were preserved notwithstanding defendant's failure to object at trial." *State v. Chambers*, 387 N.C. 521, 524 (2025); *see State v. Bunning*, 346 N.C. 253, 257 (1997) ("[A] trial by a jury which is improperly constituted is so fundamentally flawed that the verdict cannot stand."). Thus, Defendant's argument is properly preserved for appellate review and we address it now.

Both our State and Federal Constitutions afford a criminal defendant the right to a trial by a twelve-member jury. *See* U.S. Const. amend. VI; N.C. Const. art. 1,

§ 24; *State v. Dalton*, 206 N.C. 507, 512 (1934) ("[T]hat the term 'jury' as understood at common law and as used in the Constitution imports a body of twelve men duly summoned, sworn, and impaneled . . . ."); N.C.G.S. § 15A-1215(a) (2025) (codifying 12-member-jury requirement). Our appellate courts consistently reject any "variation in the number of jurors." *Chambers*, 387 N.C. at 526; *see, e.g.*, *Whitehurst v. Davis*, 2 Hayw. 113, 113 (1800) (per curiam) (invalidating thirteen-member jury verdict because "any innovation . . . in the least degree to a departure from the ancient mode[ ] may . . . endanger or pervert this excellent institution").

Likewise, an alternate juror's presence "in the jury room after a criminal case has been submitted to the regular panel of twelve is always error," *State v. Bindyke*, 288 N.C. 608, 623 (1975), and "is prejudicial when the alternate's presence occurs during the actual *deliberations* of the jury," *State v. Godwin*, 95 N.C. App. 565, 569 (1989) (first citing *Bindyke*, 288 N.C. at 627; then citing N.C. Const. art. I, § 24; and then citing N.C.G.S. § 9-18). In *State v. Bindyke*, our Supreme Court held that "any time an alternate is in the jury room *during deliberations* he participates by his presence and . . . void[s] the trial" regardless of whether he says little or nothing. *Bindyke*, 288 N.C. at 627–28. Because there is "no substitute for common sense," however, the *Bindyke* Court also specified an exception to the rule when "the alternate's presence in the jury room is *inadvertent and momentary*," such that the trial court can "clearly see[ ] or immediately determine[ ] that the jury has not begun its function as a separate entity." *Id.* at 628 (emphasis added). In support, it cited

*People v. Rhodes*, 38 Ill. 2d 389 (1967), recognizing that the Illinois Supreme Court "sensibly held" in that case that the trial court did not err per se where an alternate juror went into the jury room to retrieve her coat before the jury had begun deliberations. *See Bindyke*, 288 N.C. at 628. Based on this reasoning, the *Bindyke* Court held that where an alternate juror's "presence in the jury room is discovered so promptly that the trial [court] believes it probable [that] no deliberations have begun," the trial court may recall the jury and inquire to the extent of the jury's deliberations. *Id.* at 629–30. If jury deliberations have not begun, the trial court may excuse the alternate and have the jury return to consider its verdict; but if the jury has started to deliberate, the trial court must declare a mistrial. *Id.*

Our Supreme Court has acknowledged that "[a]t the heart of the Court's holding in *Bindyke* was the appearance of impropriety during the *deliberations* of the jury." *State v. Kennedy*, 320 N.C. 20, 30 (1987). But in *State v. Jernigan*, 118 N.C. App. 118 N.C. App. 240, 246–47 (1995), this Court clarified that the selection of a foreman does not "constitute[ ] 'deliberations,' 'discussion of the case,' or 'comment with reference to what the verdict should be,' as proscribed by *Bindyke*." Additionally, we presume that jurors "attend closely to the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *State v. Jennings*, 333 N.C. 579, 618 (1993). Thus, absent any evidence to the contrary, we presume that jurors "followed the [trial] court's instructions." *State v. Best*, 324 N.C 502, 516 (1996). Because jurors are

presumed to follow the trial court's instructions, and because selecting a foreperson differs from deliberating a verdict, *Bindyke* does not apply to an alternate's presence during foreman selection.

This case is instead similar to *State v. Jernigan*, where the trial court accidentally allowed an alternate to exit with the juror after it instructed them to select a foreperson and to not discuss the case. *Jernigan*, 118 N.C. App. at 240. The *Jernigan* Court recognized that *Bindyke*'s requirement did not apply because the jury "had not retired to discuss the case." *Id*. at 247. Rather, in the absence of any evidence to the contrary, the trial court assumed that the jurors followed its instructions and found no error as a result. *Id.*; *see Best*, 324 N.C at 516.

Here, the trial court instructed the jurors "not to begin discussing the case until [they] had selected a foreperson." When defense counsel noticed an alternate juror exit with the other twelve, the trial court promptly ordered that the alternate "come back" and directed the bailiff to retrieve her. The record does not suggest that the alternate entered the jury room, communicated with jurors, or participated in any discussion regarding the verdict. Rather, the transcript indicates that the jury did not begin deliberating until after the trial court retrieved the alternate juror.

Following *Jernigan*, we hold that the presence of an alternate juror during the jury's selection of a foreperson, where the trial court has instructed jurors not to begin deliberations, does not constitute error per se. *Jernigan*, 118 N.C. at 246–47. Here, the trial court instructed the jury to select a foreperson and not to deliberate until

they did so. Absent any evidence to the contrary, this Court may properly assume that the jury followed its instructions. Thus, the trial court had no need to conduct a *Bindyke* inquiry to ask whether the jury had begun deliberations and did not err by conducting no such inquiry. Accordingly, we discern no error.

## IV.    Conclusion

For the reasons above, this Court holds that the trial court did not err because the alternate juror did not intrude upon the jury's deliberations at any point.

NO ERROR

Judge ARROWOOD concurs.

Chief Judge DILLON dissents by separate opinion.

No. COA25-15 – *State v. Smith*

DILLON, Chief Judge, dissenting.

Defendant has been convicted by a jury of horrific crimes. These convictions were certainly supported by strong evidence presented by the State at trial.

On appeal, though, Defendant argues his right under our state constitution to have his fate decided by a jury composed of 12 individuals, no more or no less, was violated when the alternate juror was sent back with the jury for a brief period after the jury was given the case. Though, from my review of the record, I highly doubt the jury had begun deliberations prior to the removal of the alternate from the jury room, there is nothing in the record to indicate the jury had *not* begun its deliberations prior to the alternate's removal. Therefore, I conclude we have no choice but to order a new trial based on binding precedent from our Supreme Court, as explained below.

Binding precedent from our Supreme Court mandates that unless it is obvious from the record the jury had not yet begun deliberations prior to the removal of the alternate from the jury room, the defendant is entitled to a new trial, even if the defendant made no objection at trial. The seminal case on this issue was decided in 1975, where our Supreme Court considered a similar situation, where the alternate juror in that case retired with the jury for "three or four minutes" after the jury was

given the case. *State v. Bindyke,* 288 N.C. 608, 621 (1975). Like in the present case, in *Bindyke*, the defendant argued on appeal the alternate's brief presence violated his right to a 12-person jury under Article 1, section 24 of our state constitution. In considering the defendant's argument, our Supreme Court first noted two things: (1) the trial judge "summarily recalled and dismissed the alternate *without making any effort to ascertain whether the jury had begun its deliberations*" and (2) "the defense counsel *did not move for a mistrial*" or otherwise ask the trial court to ascertain whether the jury had begun deliberations. *Id.* at 622 (emphasis added).

Then after reviewing cases from around the country, our Supreme Court stated North Carolina would follow the "majority" rule, that the presence of an alternate in the jury room during the jury's deliberations violates N.C. Const. art. I, § 24 and G.S. 9-18 and constitutes reversible error per se[.]" *Id.* at 627.

Prior to reaching our Supreme Court, *our* Court had held the alternate's presence for "only three or four minutes" was not prejudicial error because "the alternate did not participate in the deliberation and verdict of the other twelve." *Id.* at 629 (quoting *State v. Bindyke*, 25 N.C. App. 273, 277 (1975).

Our Supreme Court, however, reversed our Court, as there was nothing definitive in the record to show the jury had not started deliberations, stating "it cannot be assumed that observations and deliberations which take place *during the*

*first few minutes* after the jurors retire are less significant to the verdict than later deliberations." *Id.* at 269 (emphasis added). Specifically, the Court reasoned:

> We cannot adopt a rule which would allow the trial judge to attempt to determine whether the alternate was present in the jury room a "substantial" length of time during deliberations or had participated in the deliberations to defendant's prejudice. Where would the court draw the line between insubstantial and substantial presence? . . . We hold at any time an alternate is in the jury room *during deliberations* he participates by his presence and, whether he says little or nothing, his presence will void the trial.

*Id.* at 627-28.

The Court, however, noted that this foregoing *per se* reversible error rule has "no application where the alternate's presence in the jury room is inadvertent and momentary, *and it occurs under circumstances from which it can be clearly seen or immediately determined that the jury has not begun its function as a separate entity.*" *Id.* at 628 (emphasis added). That is, a new trial is not required where the record *clearly shows* the jury had not begun deliberations prior to the removal of the alternate from the jury room. In so holding, the Court cited with approval cases from the California and Illinois supreme courts. *Id.* at __. In those cases, it was held the temporary presence of an alternate in the jury room was not prejudicial where the trial court learns after an inquiry that no deliberations had yet begun. *People v. French*, 12 Cal. 2d 720, 771 (1939) (courtroom sheriff's affidavit); *People v. Rhodes*, 38 Ill. 2d 389, 395 (alternate juror sworn testimony).

Our Supreme Court, though, did provide a process by which a new trial may be avoided, where an alternate is inadvertently allowed to be in the jury room for a brief time, namely, to conduct a limited inquiry to determine whether the jury had, in fact, begun deliberations:

> [The general] rule, as previously stated is this: The presence of an alternate juror in the jury room at any time during the jury's deliberations will void the trial. The alternate has participated by his presence; and the court will conduct no inquiry into the nature or extent of his participation. During that relatively short period, however, if the inadvertent presence of the alternate in the jury room is discovered, and no deliberations have begun before he is removed, his mere temporary presence would not invalidate the trial. Therefore, if the judge, from his trial experience and knowledge of the circumstances of the particular case, believes it probable that the jury has not begun its consideration of the evidence, he may properly recall the jury and the alternate and, in open court, inquire of them whether there had been any discussion of the case. If the answer is No, the alternate will be excused and the jury returned to consider its verdict. If the answer is Yes, there must be a mistrial. No inquiry into the extent or nature of the deliberations is permissible.

*Bindyke*, 288 N.C. 628-29. The Court, though, did order a new trial in *Bindyke* because the trial court failed to conduct an inquiry of the jurors to determine whether they had begun deliberations. *Id.* at 629 ("In our view, in this case, the trial judge could have properly conducted this limited inquiry. However, he did not do so.").

In 1999, our Supreme Court, following its rationale in *Bindyke*, held that a defendant was *not* entitled to a new trial because the trial judge in that case *did*

inquire the jury and determined deliberations, in fact, had not yet begun while the alternate was with them in the jury room. *State v. Parker*, 350 N.C. 411, 426 (1999).

In the present case, though, the trial judge failed to make any inquiry of the jurors to determine whether deliberations had begun prior to the bailiff retrieving the alternate from the jury room. To be sure, the portion of the transcript cited in the majority opinion comprises only a single page and can be read by an appellate judge in well under a minute. However, there are no timestamps in the transcript. We do not know how long after the jury departed that the defense counsel pointed out to the court the alternate had been in the jury room with the regular jurors. We do not know if there were any pauses between statements appearing in the transcript prior to the trial judge finally sending the bailiff to the jury room with the verdict sheet and to retrieve the alternate. Perhaps they were back in the room for only a minute or two. However, again as our Supreme Court emphasized, "it cannot be assumed that observations and deliberations which take place *during the first few minutes* after the jurors retire are less significant to the verdict than later deliberations." *Bindyke.* 288 N.C. at 629 (emphasis added).

Perhaps the trial court's error was harmless beyond a reasonable doubt, the standard used for most constitutional errors. However, the presence of an alternate during deliberations is per se error. *See also State v. Malachi*, 371 N.C. 719, 735

(2018) (reiterating the holding in *Bindyke* that the presence of an alternate during deliberations is per se reversible).

Indeed, this past year, our Supreme Court again reiterated its holding in *Bindyke* that "the presence of an alternate in the jury room was error per se" which was preserved "notwithstanding defendant's failure to object at trial." *State v. Chambers*, 387 N.C. 521, 524 (2025). In this recent case, the Court considered the constitutionality of G.S. 15A-1215, which allows deliberations to proceed where an alternate juror is allowed to take the place of a regular juror after deliberations have begun. *Id.* at 526. The Court held the statute was constitutional because it provided that (1) "in no event shall more than [twelve] jurors participate in the jury's deliberations" and (2) the trial court must instruct juries to "begin . . . deliberations anew" if an alternative juror is substituted after jury deliberations have begun." *Id.* The Court reasoned:

> When a jury follows the trial court's instruction and restarts deliberations, as it is presumed to do, *see State v. Prevatte*, 356 N.C. 178, 254 [] (2002), there is no longer a risk that the verdict will be rendered by thirteen people. This is because any discussion in which the excused juror participated is disregarded and entirely new deliberations are commenced by the newly-constituted twelve: the original eleven jurors and the substituted alternate. Therefore, the ultimate verdict is rendered by the constitutionally requisite jury of twelve.

*Id.* at 526-27. However, the safeguards in *Chambers* is not present here.

I am constrained to follow Supreme Court precedent regarding the sanctity of a 12-person jury, no matter the horror of the crime alleged. And I appreciate that the remedy of granting a new trial is a high price for what appears to be such a minor mistake. However, our Supreme Court also considered this cost:

> As much as we regret the necessity of imposing upon the State the penalty of a retrial of this case, we are persuaded that higher considerations require it, and that the rule which we have adopted will, in the long run, create certainty and promote judicial economy.

*Bindyke*, 288 N.C. at 629-30.

In my view, our Court's decision in *State v. Jernigan* cited by the majority is easily distinguishable. The trial judge in that case had expressly told the jury *not* to begin deliberations but to only pick its foreperson during the time when the alternate was in the jury room. However, such was not the case here, where the circumstances or more akin to those in *Bindyke* and *Parker*.

Accordingly, because the trial court told the jury they were allowed to begin deliberations after picking a foreperson, the alternate was sent with the jury to the jury room, and the trial court did not make an inquiry as to whether the jury had begun deliberations during the few minutes the alternate was with them, my vote is to vacate the judgment and award Defendant a new trial.